(83 N. W. Rep. 9.)

---

## WILLIAM M. BALLOU *vs.* AMUND BERGVENDSEN.

Opinion filed May 16, 1900.

### Brokers—Sale of Realty—Written Authority.

A real estate broker with whom lands are listed for sale by the owner has no authority to make contracts for the sale thereof which will bind the owners, in the absence of written authority signed by such owners authorizing him to do so.

### Alteration of Contract by Agent Avoids It.

A contract for the sale of land was executed by the owner, and left with his agent for the sale of such land, for delivery to the purchaser. The agent altered the instrument, by substituting the name of another person, and changed both the consideration and the rate of interest, and delivered the same to such other person. *Held,* that the contract so delivered was not the contract of the owner.

**Contract Void.**

> *Held*, further, under the facts stated in the opinion, that as a new contract the agent had no authority to make it, and that it was not ratified by the owner, and is a nullity, and furnishes no justifiction to the person entering into possession thereunder.

Appeal from District Court, Ramsey County; *Morgan, J.*

Action by William M. Ballou against Amund Bergvendsen. Judgment for plaintiff. Defendant appeals.

Affirmed.

*Siver Serumgard,* for appellant.

*M. H. Brennen* and *Brennan & Kennedy,* for respondent.

YOUNG, J. This is an action of ejectment to recover the possession of a quarter section of land located in Ramsey county. The case was tried to the court without a jury. The plaintiff prevailed, and the defendant brings the case to this court for trial *de novo.* The complaint sets forth the plaintiff's ownership of the land in dispute, the unlawful entry of the defendant thereon, also damages suffered by reason thereof, and prays for judgment dispossessing the defendant. The answer admits that the plaintiff has the legal title to the land, but denies that defendant wrongfully entered into the possession of said premises, or that he holds possession unlawfully; and in this connection alleges that he took and now has possession under and by virtue of a written contract of purchase executed by plaintiff, and delivered to him by one A. M. Powell, plaintiff's duly-authorized agent, for the sale of said land; further, that, pursuant to the terms of said contract, he paid to the plaintiff, through his said agent, the sum of $100 on the purchase price, and that plaintiff still retains the same. A copy of the contract is attached to the answer. The plaintiff replied, denying the execution of the contract; also denying that he either received or retained any portion of the purchase price of the land, or authorized his agent to do so.

The determination of the case turns entirely upon facts which are not in dispute. They are substantially these. The plaintiff owned several tracts of land in Ramsey county, among which was the tract in question. At the time the transaction involved in this case occurred he resided in Amherst, Mass. These lands were listed by him with A. M. Powell, a real estate dealer at Devils Lake. There is some evidence that he left with Powell a written memorandum of each parcel, with the price and terms of sale. No such memorandum was produced at the trial. It appears to have been lost, and oral testimony was given as to its contents, but there is no evidence that it was signed by plaintiff. The evidence shows that Powell had no written authority from plaintiff authorizing him to make contracts for the sale of his lands generally, or any such authority as to the particular tract, except as will hereafter appear. His agency was that of a real estate broker, and extended only to procuring purchasers for plaintiff's lands. In case a sale was effected, he received a commission of 5 per cent. on the purchase price. The plaintiff fixed

the price, rate of interest, time and terms of payment, and executed all contracts personally, and reserved the right of rejecting any proposed sale. In January, 1898, Powell found a probable purchaser for this particular tract in one Frank Fuller. In accordance with his course of dealing with plaintiff, he prepared duplicate contracts, which were made by using printed forms, and writing in the names of the parties, consideration, rate of interest, description of land, and other details necessary to make them represent the contract agreed upon; and on January 29, 1898, sent the same to the plaintiff to be executed, with an accompanying letter, explaining the financial standing of Fuller, the proposed purchaser. The sale to Fuller was approved by plaintiff, and on February 5, 1898, he signed the contracts, and returned them to Powell for completion, by obtaining a cash payment of $100, which was provided for in the contract, and by securing Fuller's signature to the same. When these blanks were returned to Powell, the name of Frank Fuller was written in as party of the second part. The consideration to be paid by Fuller, which was $950, was also written in ink, as well as the rate of interest on deferred payments, which was 7 per cent. For some reason Fuller did not sign the contracts or complete the purchase. A number of letters were sent by plaintiff to Powell, inquiring whether the sale to Fuller had been consummated, but no reply was received. On March 3, 1898, he wrote: "Is it the case that the contract with Fuller is completed? I have another inquiry for that tract in case Fuller has not signed the contract." On March 14, 1898, the plaintiff wrote Powell as follows: "I am in receipt of a telegram from Mr. Roberts definitely accepting. as I understand it, an offer that I made him on the Belgrade place (which is the land in suit) when in Devils Lake last fall, viz: the same price at which I listed it with you. This new phase that the matter has taken makes it still more important to return the contract prepared for Fuller, even than when I wrote my two last letters. I infer that he cannot have signed it." This letter was not received by Powell until March 17th. On March 12th, prior thereto, one E. T. Moen, an employe of Powell's, made an oral agreement for a sale of the land to this defendant. The terms differed from those which plaintiff had made for Fuller in several particulars. Two days later Powell, in pursuance of the oral agreement of his employe, Moen, delivered to the defendant the alleged contract upon which he bases his defense. The latter at the same time paid Powell $100 on the purchase price, and under the authority of such contract took possession of the premises. This contract, which was signed by defendant in duplicate, bears the signature of both the plaintiff and the defendant. It is not, however, plaintiff's contract. It appears that Moen, Powell's employe and under his direction, took the Fuller contracts, which Powell still had in his possession, and by erasures and interlineations altered the same in such particulars as were necessary to make it conform to the terms agreed upon with the defendant. Fuller's name was scratched out, and that of the defendant written in. The considera-

tion was changed from $950 to $925, and the rate of interest from 7 to 8 per cent. Whether the defendant was present when the erasures were made is not certain, but it is clear that he knew that the contract as he signed it had not been forwarded to Powell by the plaintiff in the form he signed it, for a sufficient time had not elapsed—but two days from the date of his oral agreement—to enable Powell to transmit the terms of the proposed sale to plaintiff in Massachusetts and get the contract back. This, however, is not material. One copy of this alleged contract with defendant was mailed to the plaintiff by Powell on March 15th, together with a draft for $53.50, which was the amount of the cash payment, less his commission, together with a letter stating that the Fuller deal had fallen through, and that he had closed a deal with the defendant. Plaintiff immediately returned the contract and draft to Powell, and refused to ratify the transaction. Powell sent them back, and explained that he had executed it in good faith, and requested a ratification of the sale. Plaintiff again returned the papers, and has positively and at all times denied Powell's authority to make the contract, and has likewise refused to ratify it. When advised that the defendant had taken possession under the contract, and was making improvements, he at once, and on April 19, 1898, wrote the defendant as follows: "I have to notify you that in placing buildings upon my land in Morris township, or in any way attempting to occupy the land, you are trespassing upon property where you have no right. I have never authorized any one to give you any claim upon it. Mr. Powell has asked me to ratify an agreement which he says that he has arranged with you, and has sent me a contract of sale, in which your name has been substituted for Frank Fuller's, for whom I prepared and signed the contract of sale last winter. I refuse to recognize such a document as that, and have returned to Mr. Powell a draft which he tendered me, stating that it was from you. It will be necessary for you to vacate the premises, and refrain from further trespassing."

The trial court found "that before making any improvements on said land the defendant had due notice from the plaintiff that plaintiff disallowed and disaffirmed said contract, and refused to acknowledge the same, or ratify the acts of said A. M. Powell in the premises." This finding of fact is challenged by appellant, and our examination of the evidence leads us to the conclusion that it is not supported. But we do not deem it a material fact in the determination of the case; for it is apparent that, if the defendant had a valid contract of purchase, his entry and possession was lawful, and if, on the other hand, the contract was invalid, he was a trespasser *ab initio*. Possession under an instrument which is a nullity gives no rights, save by ratification; and in this case there was no ratification, but the most prompt and emphatic disavowal. The sole question, then, is this: Is the contract under which defendant justifies his possession a valid contract? A negative answer must be given to this question. This being a contract for the sale of real

property, it is essential to its validity that it be signed by the vendor personally, or by an agent who is authorized to execute it, by written authority subscribed by the vendor. Rev. Codes, § 3887, subd. 5. When the two instruments referred to were sent to Powell, they covered all the details of the sale to Fuller, and lacked only the latter's signature to make the sale to him complete. When altered, and delivered to the defendant, the vendee, consideration and rate of interest were different. It is patent that this was not plaintiff's contract. He had executed no such contract; neither, as we have seen, did he ratify it. So far as it depends on the plaintiff individually, it is no more than a forgery. The alterations changed its character entirely, and if it has any validity it must of necessity be as a new contract, and one resting for its validity upon the authority of Powell to make it; for there is no pretense that the plaintiff acted personally in making the alterations, or even that he was aware that they had been made until he received the contract by mail. Defendant contends that Powell did have authority as plaintiff's agent to make a binding contract of sale. A complete answer to this would be that no such contract is relied upon. The instrument which defendant sets up to justify his possession purports to be a contract executed by the plaintiff personally, and not one executed by Powell as plaintiff's agent. However, had it purported to have been executed by plaintiff through Powell as agent, still it would be a nullity; for Powell was without the requisite written authority to make a contract for the plaintiff. His authority was merely that of a real estate broker. It is well settled that their authority does not extend to binding their principals by contracts of sale, but merely to procuring purchasers for the property listed with them, who will be acceptable to the owners. *Coleman* v. *Garrigues,* 18 Barb. 60; *Glentworth* v. *Luther,* 21 Barb. 145; *Morris* v. *Ruddy,* 20 N. J. Eq. 236; *Duffy* v. *Hobson,* 40 •Cal. 240; *Armstrong* v. *Lowe,* 76 Cal. 616, 18 Pac. Rep. 758; *Siebold* v. *Davis,* 67 Ia. 560, 25 N. W. Rep. 778; *Stewart* v. *Pickering,* 73 Ia. 652, 35 N. W. Rep. 690. In *Halsey* v. *Monteiro* (Va.) 24 S. E. Rep. 258, the court said: "A real estate broker or agent is defined to be one who negotiates the sale of real property. His business generally is only to find a purchaser who is willing to buy the land upon the terms fixed by the owner. He has no authority to bind his principal by signing a contract of sale. A sale of real estate involves many things besides fixing the price. The delivery of the possession has to be settled; generally, the title to be examined; and the conveyance, with its covenants, to be agreed upon and executed by the owner,—all of which require conference and time for their completion. They are for the determination of the owner, and do not pertain to the duties, and are not within the authority, of a real estate agent. For obvious reasons, therefore, the law wisely withholds from him any implied authority to sign a contract of sale on behalf of his principal." See, also, *Holmes* v. *Redhead*

(Ia.) 73 N. W. Rep. 878; *Everman* v. *Herndon* (Miss.) 15 South. Rep. 135; and as to alterations, *Walsh* v. *Hunt* (Cal.) 42 Pac. Rep. 115, 39 L. R. A. 697. We accordingly hold that the instrument which the defendant received from Powell was a mere nullity. It was not executed by the plaintiff; neither was it authorized or ratified by him. It therefore furnishes no authority or justification for defendant's entry upon the premises. If he has been misled, and shall suffer loss, it is not chargeable to the plaintiff. His recourse must be against those who are the direct cause of it, namely, the persons who imposed upon him a spurious contract. The judgment of the District Court is affirmed. All concur.