## LICHTY v. DAGGETT.

In an action for specific performance of a contract to sell land, made by brokers with whom defendant listed the land for sale, evidence held not to sustain a finding that defendant agreed to discharge the mortgage on the land, or that the mortgagee agreed to cancel it before maturity, unless a difference of 2 per cent. interest was paid.

By the direct provision of Rev. Civ. Code, § 1238, subd. 5, a contract, for the sale of real property is invalid, unless the contract, or some memorandum thereof, be in writing, and signed by the party to be charged, or his agent, and, if made by his agent, is invalid, unless his authority is in writing, subscribed by the party to be charged; section 1311 substantially repeating the provision.

Merely listing land with brokers for sale at a stated price only authorizes the brokers to find a purchaser for the owner, and not to make any contract with the purchaser to convey the property, so that a letter from the owner to brokers, stating that his price for the land was a certain sum, payable as provided, and requesting the brokers to let him hear from them, did not authorize the brokers to execute a contract with a purchaser for the sale of the land.

The owner of land authorized brokers to sell it for $5,000 net, and, in reply to a letter stating that they had sold it for $5,000 cash, stated that if the brokers or purchaser assumed a mortgage thereon, with interest, he would close the deal, and the brokers replied that if the owner would satisfy the mortgage, they would allow him the interest, but did not agree to pay the difference between 5 and 7 percent. interest on the mortgage debt, as required by the mortgagee as a condition precedent to cancellation. Held, that the brokers did not consent to the terms of the offer made by the owner to sell for $5,-000 cash.

(Opinion filed, May 21, 1909.)

Appeal from Circuit Court, Brown County. Hon. J. M. Mc-Coy, Judge.

Action by John Lichty against S. Daggett. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Reversed.

*Robertson & Dougherty,* for appellant.

The usual agency of a real estate broker extends no further than to securing an acceptable purchaser, or a purchaser who is willing, ready and able to comply with the conditions of sale supplied to the broker by the owner, and in the absence of express additional authority, has no authority to enter into written contracts of sale on behalf of the vendor.. Sec. 1311, Civil Code; Brandrup v. Britton, 92 N. W. 453, 11 N. D. 376; Ballou v. Bergvendson, 83 N. W. 10, 9 N. D. 285. So long as there remains any of the material conditions of a contract to be settled and agreed upon no agreement exists, and where the buyers impose conditions outside of terms and prices, such conditions require the assent of the vendor. Schenectady Stove Co. v. Holbrook, 4 N. E. 4; Clark on Contracts, p. 61. A contract is void and will not support an action by either party thereto while anything remains to be done by or negotiated between them affecting the subject-matter of the agreement. Wardell v. Williams, 28 N. W. 796; Gilbert v. Baxter, 32 N. W. 364; Clark on Contracts, p. 39; Benz v. Eubanks, 41 Kan. 28; Burkholter v. Jones, 3 Pac. 559; Erickson v. Wallace, 45 Kan. 430, 25 Pac. 898; Shields v. Hoobeck, 30 Neb. 536, 46 N. W. 629; Rushton v. Thompson, 35 Fed. 635; Mushgrove v. Hodges, 27 Pac. 121; Anson on Contracts, pages 4 and 33, Vol. 9, Cyc. 265.

*Byron & Abbott,* for respondent.

These letters disclose every part of the contract, subject matter, price, condition. description and terms, they constitute a valid contract. These letters upon which respondent bases his right to recover comply with these conditions. Fox v. Easter, 10 Okla. 527; Gault v. Stormont; 54 Mich. 636; Eggleston v. Wagner, 46 Mich. 610; Ferguson v. Blackwell, 8 Okla. 489. Whether or not the parties assented to the terms of the contract is one of law for the court to determine from the facts in the case. McPherson v. Fargo, 10 S. D. 611.

CORSON, J. This action was instituted by the plaintiff to enforce the specific performance of a contract for the sale of a half section of land in Brown county, claimed to have been entered into by the defendant with the plaintiff, by which the defendant with the plaintiff, by which the defendant agreed to convey the property to the plaintiff. The case was tried to the court; and, findings and judgment being in favor of the plaintiff, the defendant has appealed.

It is alleged in the complaint, in substance, that the defendant was the owner of said half section of land in Brown county; that the defendant by letter, appointed Cooley & Stiger, of Britton, defendant's agent to sell said real estate for the sum of $5,000; that defendant's authority and direction to sell said real estate is contained in a letter written by the defendant, bearing date September 5, 1904; that afterwards the said Cooley & Stiger sold the above-described real estate to the plaintiff, and that said contract was in writing; that upon the 22d day of July, 1905, the said Cooley & Stiger by letter informed said Daggett that they had sold the real estate above described, and inclosed to him a draft for $100. Various letters passing between the defendant and Cooley & Stiger are set out in the complaint, but, as they will be referred to hereafter, it will not be necessary to insert them here. It is then alleged that the plaintiff had demanded a conveyance which the defendant has refused to make, and that plaintiff is ready and willing to pay this defendant the sum of $5,000; that the plaintiff has deposited, and there is still on deposit, in the Marshall county bank in Britton, the sum of $5,000 to the credit of, and subject to, the order of the defendant, as the purchase price of the said tract of land; that defendant has refused, and still refuses, to execute a conveyance thereof. Wherefore the plaintiff demands judgment; that the defendant be required to execute and deliver to the plaintiff a good and sufficient deed for said premises. The defendant by his answer admits the first paragraph of the complaint, in which it is alleged that he is the owner of the property in controversy; admits that defendant has not executed any conveyance of said property to the plaintiff, and still refuses to convey the same; admits that there is a mortgage upon the said property of $900; and

denies each and every other allegation in the said complaint. The court found the facts substantially as alleged in the complaint, and also found that the above-named defendant contracted and agreed to procure a satisfaction of the mortgage; that M. R. Kenefick, the holder of the said mortgage, contracted and agreed to satisfy the same; that in addition to the said sum of $5,000 this plaintiff contracted and agreed to procure from said Kenefick the satisfaction of the said mortgage; that by the terms of said contract of sale the lease then existing on said real estate the defendant agreed to assign to the plaintiff; and that the defendant accepted said contract of sale so made by his said agents. The court concludes as a matter of law that the plaintiff is entitled to a decree for the specific performance of the said alleged contract, and thereupon a judgment was entered in accordance therewith.

Defendant excepted to very nearly all the court's findings, on the ground that they were not justified by the evidence, specifying the particulars in which the evidence was insufficient. As errors of law the defendant specifies that the evidence is insufficient to justify the conclusions of law. Defendant further specifies that the court erred in overruling defendant's objection to the introduction of the various exhibits, which were the letters written by Cooley & Stiger, as agents of the defendant, and by the defendant. The transaction between the defendant and Cooley & Stiger is evidenced entirely by the letters which were introduced in evidence. Exhibit G, which seems to have been the first letter, was written by Cooley & Stiger to the defendant, and is as follows: "S. Daggett, Dell Rapids, S. D.—Sir: Do you care to have us show and try to sell your land namely: south half 13-127-60, if so please give us your net price and best terms. * * * Yours truly, Cooley & Stiger. Dated 1-9-1904." To this letter the defendant replied as follows: "Dell Rapids, S. D., Sep. 5, 1904. Cooley & Stiger, Britton, S. D. Yours of recent date received. Would say that my land is for sale, the S. ½ of 13-127-60, Brown Co. My net price is $5,000, which I think is not too high, $3,000 cash, $1,000, first mortgage $1,000. Will take second mortgage or will take up first mortgage and take first mortgage for $2,000.00 to myself at 6 per cent. int. to suit purchaser. Please let me hear from you soon. * * * Resp. yours, S. Daggett."

No further correspondence seems to have taken place between the parties until July, 1905, but on July 19th Cooley & Stiger entered into a contract with the plaintiff by which they attempted to bind the defendant to convey the said property to the plaintiff, upon the following conditions, viz.: "One hundred dollars ($100.) dollars in cash paid down this day by Jno. N. Lichty, the receipt of which he acknowledge and the further sum of forty-nine hundred ($4,900.00) dollars to be paid in cash upon the approval of abstract showing a good, clear and perfect title to the land above described, otherwise all money paid will be refunded. It is furthermore agreed that said Jno. N. Lichty shall be turned over 1905 lease and shall have S. Daggett's share of the crop as shown in lease. S. Daggett, by Cooley & Stiger. I herewith agree to buy the above described land according to the terms of above contract. Jno. N. Lichty." On July 22, 1905, Cooley & Stiger wired Daggett as follows: "7-22-1905. Britton, S. D. 22. S. Daggett, Dell Rapids. Have sold your farm. Five thousand cash. Send abstract—see letter. Share crop, with sale. Cooley & Stiger." On the same day they wrote to Daggett as follows: "Britton, S. D., 7-22-1905. S. Daggett, Esq., Dell Rapids, S. D.—Dear Sir: We have sold your farm for $5,000.00 cash. Kindly take up mortgage and send us abstract to be brought down to date showing all transfers. Give this your immediate attention. One-fourth the crops goes with sale. Yours truly, Cooley & Stiger. Inclosed find draft for $100.00 to close deal. Contract is in the office. C. & S." On the same day Daggett apparently replied to the telegram as follows: "Dell Rapids, S. D., July 22, 1905. Cooley & Stiger, Britton, S. D. Sorry but cannot let the S. ½ 13-126-60 go at five thousand net to me as that price was for a short time only, but will make a price if you wish that is right. Resp. yours, S. Daggett."

It would seem from the letter of Cooley & Stiger bearing date of July 27th that Daggett wrote a letter on the 24th to Cooley & Stiger returning the $100 draft, as Cooley & Stiger in their letter of that date to Daggett, among other things, says: "Britton, S. D., 7-27-1905. S. Daggett, Dell Rapids, So. Dak.—Dear Sir: Yours of the 24th at hand returning us draft of $100.00 sent you as earnest money on sale of the S. ½ 13-126-60. We herewith return

same, also copy of your letter listing with us as we believe same as to terms and price has been forgotten by you. * * * Hoping to receive abstract and discharge of old mortgage together with W. D. We remain, Yours truly, Cooley & Stiger." On the 28th Daggett wrote Cooley & Stiger the following letter: "Dell Rapids, 7-28-1905. Cooley & Stiger, Britton, S. D. Yours received containing draft. Am sorry to let the farm go as I am quite sure that it is too cheap, but as you let the crops go I don't feel quite satisfied. The mortgage is $900.00. I don't know for sure that it can be paid until the next note is due. Now if you will assume this $900.00 together with the int. which is about $35.00 we will try to fix this deal right away. In asking this I think this is nothing more than is right, as the crops should not go with a sale after July 1st. Resp. yours, S. Daggett." On July 31st Cooley & Stiger wrote Daggett as follows: "Britton, S. D., 7-21-1905. S. Daggett, Dell Rapids, S. D.—Dear Sir: We are in receipt of yours of the 28th and note your acceptance of the terms of our contract. We note what you say regarding the mortgage of $900.00 and if you will take this up and give us a warranty deed clear of incumbrances we will allow you the $35.00 interest you speak of. We can close this up just as soon as abstract is accepted. Kindly forward same to us at once. Yours truly, Cooley & Stiger." On August 2d Daggett wrote Cooley & Stiger as follows: "Dell Rapids, S. D., Aug. 2, 1905. Cooley & Stiger, Britton. Yours received and would say cannot pay off mortgage on my land. You can have land and assume mortgage and int., but no crops go with it. S. Daggett." On August 3d Cooley & Stiger wrote to Daggett as follows: "Britton, S. D., 8-3-1905. S. Daggett, Dell Rapids, S. D.—Dear Sir: Replying to your favor of Aug. 2, 1905, we say—We sold your land as authorized by your letter of September 5, 1904. In your letter to us of July 28th you accepted the sale as made requesting that we pay interest accrued to the amount of $35.00. The crop goes with the sale and is not reserved. We inclose you deed for execution, which you can forward to the First National Bank of Britton, So. Dak., with instructions to deliver to us upon payment of the amount your due, also forward the abstract. * * * You will

have no trouble in paying off your mortgage. Your statement in your last letter that you cannot so do is not borne out by the statement made in your former letters. Mortgage can be paid at time of closing sale if more convenient to you. Yours truly, Cooley & Stiger." On August 3d Mr. Kenefick, cashier of the bank at Dell Rapids wrote to Mr. Cooley as follows: "Dell Rapids, S. D., Aug. 3, 1905. Mr. B. R. Cooley, Britton, S. D.—Dear Sir: We have a mortgage on Daggett's land up there of $900.00 bearing 7 per cent. interest not due until Nov. 27, 1906. We do not wish to accept the money on this mortgage at this time unless some one wishes to pay the difference between 7 and 5 per cent. Mr. Daggett's abstracts are here in the bank, and he first spoke of having them sent to you, but afterwards he said he would wait until he heard from you again. Yours truly, M. R. Kenefick, Cash." On August 24th Daggett wrote or wired Cooley & Stiger as follows: "Dell Rapids, S. D., 8-24-1905. Cooley & Stiger, Britton. Farm not sold according to my terms. Resp. yours, S. Daggett."

It is contended by the defendant and appellant that the findings of the court that he contracted and agreed to procure a satisfaction of the mortgage; that the holder of the mortgage contracted and agreed to satisfy the same; that the defendant contracted and agreed to procure from said Kenefick a satisfaction of the said mortgage; that the defendant agreed to assign said lease to the plaintiff; that the defendant accepted said contract of sale of said real estate so made by the defendant's agents, Cooley & Stiger—are not supported by the evidence. We are of the opinion that the defendant is right in his contention. We fail to discover from the correspondence between the parties that the defendant at any time agreed to procure a satisfaction of the said mortgage. It will be noticed that by defendant's letter of the 28th he says in speaking of the mortgage. "I do not know for sure that it can be paid until the next note is due. Now if you will assume this $900.00 together with the interest which is about $35.00, we will try and fix up this deal right away." It will be noticed by Kenefick's letter of August 3d he says: "We do not wish to accept the money on this mortgage at this time unless some one wishes to pay the difference between 7 and 5 per cent." We a'e

unable to discover from this correspondence that either the plaintiff, or Cooley & Stiger, or the defendant, at any time, agreed to make up this difference in the interest on the mortgage, up to the time of its maturity, which was some 16 or more months subsequent to the alleged transaction between Cooley & Stiger and the defendant. It is true Cooley & Stiger agreed that they would pay the $35 interest then due on the mortgage, but they at no time agreed to make good the difference between the 5 per cent. and the 7 per cent. for the balance of the term in which the mortgage had to run. The learned circuit court evidently overlooked the fact that nowhere in the correspondence had either of the parties agreed to make good this difference, and it seems to have overlooked the further fact that the bank was not willing to surrender up or cancel the mortgage until that difference was made good to it.

It will be observed that Cooley & Stiger, in their letter of July 31st, in reply to the defendant's letter of the 28th day says: "We note what you say regarding the mortgage of $900.00 and if you will take this up and give us a warranty deed clear of incumbrances we will allow you the $35.00 interest you speak of." And on September 3d Cooley & Stiger again wrote to Daggegtt: "You will have no trouble in paying off your mortgage. Your statement in your last letter that you cannot so do is not borne out by the statement made in your former letters. Mortgage can be paid at time of closing sale if more convenient to you." It is quite clear, therefore, that the findings of the court as to the agreement of the defendant to pay off the mortgage, and that Kenefick had agreed to accept payment of the same, are not supported by the evidence, and must therefore be disregarded in the further consideration of this case.

It is further contended by the defendant that no contract for the sale of this property is disclosed by these letters; that the terms were never agreed upon, and their minds never met; that Cooley & Stiger were not authorized to make the sale, or enter into the contract in which they attempted to bind the defendant to convey the said premises to the plaintiff. We are inclined to the opinion that the defendant is right in this contention. It will be observed that the letter of defendant of September 5, 1904,

in which Cooley & Stiger claimed to have received authority to make the contract, was simply an authority to them to find a purchaser who should be able and willing to take the property at the net price of $5,000; that no special authority is anywhere conferred upon Cooley & Stiger to enter into any contract binding upon the defendant or to go further than to find such a purchaser; that in order to fix the terms upon which the sale should be made, further negotiations were necessary.

The alleged contract which the plaintiff is seeking to enforce, it will be observed, was not signed by the defendant in person, but was signed by Cooley & Stiger, who claimed to be acting for him. In this jurisdiction it is essential to the validity of a written contract, for the sale of real property executed by an agent, that the authority of the agent to sign the same, shall be evidenced by a writing subscribed by the principal. Section 1238, subd. 5, Rev. Civ. Code, provides: "Section 1238. The following contracts are invalid unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or by his agent: * * * (5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein and such agreement if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged." This requirement is substantially repeated in section 1311 which provides: "No agreement for the sale of real property, or of an interest therein, is valid unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent thereunto authorized in writing. * * *" It will be observed that the only authority in this case given to Cooley & Stiger by the defendant is that contained in the letter of September 5, 1904, and that by that letter no express authority was given to Cooley & Stiger to enter into any written contract with the plaintiff or any other person, binding the defendant to convey the property. The defendant simply says: "My land is for sale. My net price is $5,000." As will be seen from this reply, the defendant evidently contemplates further negotiations, as no definite instructions are given as to the mortgage existing upon the

property, or as to the terms of any new mortgage that may be given, the time it was to run, the time possession was to be given, and nothing said as to the transfer of the lease then existing upon the property, or the nature or character of the covenants to be contained in the deed. Clearly, therefore, Cooley & Stiger, when they attempted to execute the contract on July 19, 1905, had no authority to bind the defendant by such a contract.

It is contended, however, by the respondent that the appellant subsequently ratified this contract, but we are unable to find such a ratification in the correspondence. So far as disclosed by the correspondence in evidence, it does not appear that Daggett knew that Cooley & Stiger had entered into any written contract with the plaintiff in his name, or that he knew of the terms of the sale made by Cooley & Stiger other than it was to be for $5,000 cash. The authority conferred, therefore, by the defendant upon Cooley & Stiger was limited to finding a purchaser acceptable to the defendant, who was ready, able, and willing to purchase the property upon such terms as to net the defendant $5,000 in cash, leaving the parties to negotiate as to the manner of the disposition of the $900 mortgage, the lease on the property, and the time of giving the purchaser possession of the same. The letter of September 5th, it will be seen upon inspection, contained no language which in terms or by fair inference, authorizes Cooley & Stiger to execute a contract for the conveyance of the property in the name of the defendant.

It seems to be well settled that the mere listing of lands, with authority to sell and dispose of the same at a certain fixed price, in the absence of a special authority to enter into a written contract with the purchaser in the name of the principal, only authorizes the real estate brokers to find and present to the principal such a purchaser, but it does not authorize him to enter into any contract binding the defendant to convey the property. It would be a very dangerous doctrine to hold that a real estate broker, when authorized to find a purchaser for property at a fixed price, could without further negotiations with the owner enter into a contract binding the owner of the property, and fixing all the terms and conditions of the sale without authority so to do from the owner,

and such seems to be the views of the authorities. Halsey v. Mon-
teiro, 92 Va. 581, 24 S. E. 258; Duffy v. Hobson, 40 Cal. 240;
Coleman v. Garrigues, 18 Barb. (N. Y.) 60; Glentworth v. Luther,
21 Barb. (N. Y.) 145; Morris v. Ruddy, 20 N. J. Eq. 236; Milne
v. Kleb, 44 N. J. Eq. 378, 14 Atl. 646; Armstrong v. Lowe, 76
Cal. 616, 18 Pac. 758; Grant v. Ede, 85 Cal. 418, 24 Pac. 890;
Hedden v. Shepherd, 29 N. J. Law, 334; Young v. Hughes, 32
N. J. Eq. 372-383; Siebold v. Davis, 67 Iowa 560, 25 N. W. 778;
Stewart v. Pickering, 73 Iowa 652, 35 N. W. 690; Ballou v. Berg-
svendsen, 9 N. D. 285, 83 N. W. 10; Brandrup v Britten, 11 N.
D. 376, 92 N. W. 453.

In Coleman v. Garrigues, supra, the Supreme Court of New
York, in discussing a similar question to the one at bar says:
"There is also another objection to the plaintiff's right to recover.
The authority to Malloy was merely 'to close the bargain.' It is
well known that the general agency of brokers in real estate is
limited to finding a buyer or borrower who will assent to the
terms of the seller or lender, and then bringing the parties to-
gether. * * * The owner of real estate, who authorizes a broker
to sell his land, would be surprised to find the broker assuming to
sign a contract for the sale; and the buyer would be no less sur-
prised to find his name fixed by a broker to a contract to buy. In
dealing in real estate the authority to sign the contract is never
understood to be granted from a mere authority to make a bargain.
The proposed purchaser may be very objectionable. He may be
one who would erect nuisances to annoy the neighbors, or who
would contract to pay cash, and then cause delays which on slight
grounds a court of chancery would excuse, and so make the nom-
inal cash payment a long credit." And that court, after suggesting
several matters to be in a contract, concludes as follows: "These
are matters which the law may supply, when the parties do not,
but they are matters as to which it is known the parties are apt to
differ after they have agreed on the price; and that circumstance
makes it necessary that they be brought together before a binding
bargain be made, unless they directly authorize the agent to sign
for them. An agent, within the meaning of the statute of frauds,
who can sign the name of the owner of lands to a contract for its

sale, is not one who has a mere authority to make a bargain for the sale, but one who is made the owner's agent to sign his name to the contract."

In Halsey v. Monteiro, supra, the Supreme Court of Virginia, in discussing a case quite similar to the one at bar, says: "A real estate broker or agent is defined to be one who negotiates the sale of real property. His business generally is only to find a purchaser who is willing to buy the land upon the terms fixed by the owner. He has no authority to bind his principal by signing a contract of sale. A sale of real estate involves the adjustment of many matters besides fixing the price. The delivery of the possession has to be settled, generally, the title to be examined, and the conveyance, with its covenants, to be agreed upon and executed by the owner, all of which require conference and time for their completion. They are for the determination of the owner, and do not pertain to the duties, and are not within the authority, of a real estate agent. For obvious reasons, therefore, the law wisely witholds from him any implied authority to sign a contract of sale in behalf of his principal."

In Duffy v. Hobson, supra, the Supreme Court of California, in discussing this question of the authority of an agent to bind his principal, says: "We are of opinion that the authority given to Atkins to sell the property was not sufficient to authorize him to execute a contract of sale to Duffy, in the name of Hobson, or to sign the name of the latter to any contract of sale. We think that it was no more than a mere authority from Hobson to find him a purchaser at the price of $2,000. This is the settled construction put upon the employment of professional brokers 'to sell' or 'to close a bargain' concerning real estate, and we know of no reason why the same language, employed to express the authority of any other agent 'to sell,' should have a more extended meaning. Besides, a sale of real estate involves the adjustment of many matters in addition to fixing the price at which the property is to be sold. The deed of conveyance may be one with full covenants of seisin and warranty; or only those covenants imported by the use of the words 'grant, bargain and sell' under our statute, or it may be by quitclaim merely. The vendor may be unwilling to deal with a

particular proposed purchaser on any terms. He may consider him pecuniarily unable to comply with the contract, even if the title prove satisfactory, and he may decline to bind himself to convey to such a purchaser at the end of the time necessary to examine the title, because he might thereby in the meantime lose an opportunity to sell to some other person who might desire to purchase and in whose good faith and ability to pay he reposed entire confidence. All these and many other like considerations might, and usually do, arise in the mind of the vendor."

In Brandrup v. Britten, supra, the learned Supreme Court of North Dakota, in an exhaustive and well-considered opinion, held: "The ordinary authority of a real estate broker with whom lands are listed for sale does not extend to signing a contract of sale, and this is true whether the authority of the broker is conferred by writing or by parol. The authority to execute a contract of sale is an additional authority. It follows, therefore, that when a real estate owner executes and delivers a written authority for the sale of real estate to real estate brokers, * * * they have no authority to sign contracts for the owner." And it is held that the written instrument set out in the opinion conferred upon the defendant's agents only the ordinary authority of real estate brokers, and did not authorize them to sign the defendant's name to the contract of sale which is sought to be enforced in the action. In that case the authority conferred on the brokers was as follows: "I hereby grant to H. B. Meis and Orcutt the sale of the following described property for six months at the price and upon the terms below mentioned, with the express understanding that the said H. B. Meis shall use all diligence and make active and strong efforts to sell said property. * * * Price, net to me $9,000, not less than $3,000 cash, and assume mortgage now on land. R. T. Britten." It will be noticed that the contract in that case was much stronger and more specific than the alleged authority conferred upon the brokers in the case at bar, but it was nevertheless held not to be sufficient authority to authorize the broker or brokers to enter into a contract with the alleged purchaser binding the defendant in that action.

We are also of the opinion that the plaintiff is not entitled to

recover in this action, for the reason that there was no definite agreement between Cooley & Stiger and the plaintiff, with the defendant, as to the terms of the sale. It will be observed by the defendant's reply to an inquiry of Cooley & Stiger in September, 1904, that he fixed his net price at $5,000. This, so far as the correspondence discloses, was never changed. It will be further noticed that the defendant, in his reply to the telegram and letter of Cooley & Stiger on July 22, 1905, says: "The mortgage is $900.00. I don't know for sure that it can be paid until the next note is due. Now if you will assume this $900.00 together with the interest which is about $35 we will try and fix this deal right away." Cooley & Stiger in their reply to this assume that their terms were accepted, but it will be observed they are not, and they further add: "We note what you say regarding the mortgage of $900.00, and if you will take this up and give us a warranty deed clear of incumbrances, we will allow you the $35.00 interest you speak of." It will thus be seen that the defendant did not agree to the sale as reported to him by Cooley & Stiger, but proposed new terms, which were: "If you will assume this $900.00 together with interest," etc. These terms are not acceded to by Cooley & Stiger, but they make a counter proposition that if he (the defendant) would take up the $900 mortgage, give a warranty deed, they would allow him $35 interest. The $35 interest evidently refers to interest that had accrued on the mortgage, but they did not agree to assume the mortgage as required by the defendant. It will be further observed that the bank holding the mortgage was not willing to accept the amount due on the same unless interest between 5 per cent. and 7 per cent. for the 18 or more months that the mortgage was to run was provided for. So far as the record discloses no arrangement was made between the parties as to this mortgage, and no agreement was made by Cooley & Stiger to pay the difference in the interest, and there was no agreement on the part of the defendant, to take up the mortgage, or to make good that difference in interest, which would amount to $25, or thereabouts, and this difference in interest would reduce his net price to that extent from the $5,000. Cooley & Stiger, therefore, never furnished a purchaser able, ready, and willing to pay the de-

fendant the net sum of $5,000 for his property. It is quite clear, therefore, that the minds of the parties never met upon the terms and conditions of the sale, and that, assuming for the purposes of this decision that Cooley & Stiger were authorized to bind the defendant by a proper contract, no such contract was shown to exist in this case.

This court in the recent case of Jepson v. Marohn, 22 S. D. 593, 119 N. W. 988, held that, where defendant employed plaintiff to sell real estate for $4,200, payable $2,200 down, $1,000 in one year, and $1,000 in two years, interest at 10 per cent., plaintiff did not perform his engagement so as to entitle himself to commission by procuring a purchaser ready, able, and willing to purchase the land for $4,200 in cash, citing Stearns v. Clapp, 16 S. D. 558, 94 N. W. 430; Richards Trust Co. v. Beach, 17 S. D. 432, 97 N. W. 358, and other authorities bearing upon that question. In Stearns v. Clapp, supra, this court held: "Where a landowner wrote plaintiff that he would sell the land for $1,400 net, in reply to which plaintiff wrote that the offer was accepted, and that the deed, when executed, should be sent to a bank, to be turned over to plaintiff on payment to it of $1,400, and that if the owner had an abstract, he should send it with the deed, or write the bank to allow for one to be made, plaintiff's letter constituted a new proposal, and there was no contract."

Taking either view of the case, therefore, that Cooley & Stiger were not authorized to enter into the contract, or that there was no agreement definitely settled between the parties as to the terms of the sale, the plaintiff was not entitled to recover in this action, and the learned court's conclusions that the plaintiff was entitled to a judgment enforcing the purported contract entered into by him with Cooley & Stiger as the agents of the defendant were clearly not warranted, and the judgment of the circuit court and order denying a new trial are reversed.

McCOY, J., taking no part in this decision.