**QUEEN CITY LUMBER COMPANY, Inc.,**
Plaintiff and Appellant,

v.

**Isador FISHER and William Foster, doing business as Fisher-Foster Agency, Iva Tourangeau and Otto Fink, Defendants and Respondents.**

No. 7970.

Supreme Court of North Dakota.

Nov. 22, 1961.

Greenwood & Swanson, Dickinson, for plaintiff and appellant.

Howard A. Freed, Dickinson, for defendant and respondent Fisher-Foster Agency.

W. F. Reichert, Dickinson, for defendant and respondent Iva Tourangeau.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for defendant and respondent Otto Fink.

STRUTZ, Judge.

This is an action for specific performance of a contract to sell real estate, or, if specific performance cannot be had, for damages. The facts necessary to our decision, except such as may be mentioned in discussing the law of the case, are as follows:

On April 24, 1958, the defendants Fisher and Foster, doing business as Fisher-Foster Agency, entered into a listing agreement with the defendant Iva Tourangeau, of Minneapolis, owner of certain real property in Dickinson. By the terms of the listing agreement the owner gave to the Fisher-Foster Agency "the exclusive right to sell or contract to sell" such property.

On February 27, 1960, while this agreement was still in force, the plaintiff submitted to the defendant agency an offer of $2,250 for a certain portion of the listed property. This offer was submitted to Mr. Fisher of the agency who advised the plaintiff that the offer was too low and that he was sure it would not be accepted, but that it nevertheless would be submitted to the owner. About one week later, the manager of the plaintiff company telephoned the owner in Minneapolis to inquire if she had heard from the Fisher-Foster Agency about the plaintiff's offer for the property. The owner stated that she had not been apprised of the offer unless such information was contained in some mail which she had not yet opened. The details of the offer were then given to her, and she stated that she would write to the Fisher-Foster Agency and tell them what to do in the matter.

Several days thereafter, the manager of the plaintiff company was contacted by Mr. Foster of the agency and advised that the agency had received a letter from the owner stating that she thought the plaintiff's offer was all right. Mr. Foster further told the manager of the plaintiff company, "Now, if you want this property I will have to have a payment on this property." An earnest-money contract thereupon was entered into and a down-payment of $500 was made to the agency. This contract was signed by the manager

for the plaintiff and by Mr. Foster for the agency. Before it could be submitted to and signed by the owner, however, a second and higher offer for the same property was received from the defendant Otto Fink. The property then was sold to Fink, and the plaintiff brings this action for specific performance, or for damages.

The trial court, Honorable Harvey J. Miller, judge, held for the defendants, and the plaintiff has appealed to this court, demanding a trial de novo.

Numerous specifications of error are assigned by the plaintiff in support of its appeal, but all of these specifications relate to one of the following contentions by the plaintiff:

1. That the agreement entered into between the owner and the agency was not merely a listing agreement, setting forth property which the agency could offer for sale, but was in fact a written authority by the owner empowering the agency to sell and to make binding contracts for the sale of such property; and

2. That if this agreement should be construed to be nothing more than a listing agreement, a letter written by the owner to the agency, dated March 4, 1960, in regard to the plaintiff's offer to buy such property, which letter was written after the owner had advised the plaintiff that she would instruct the agency what to do, and in which letter the owner had said, "I think it is all right," is an approval of the plaintiff's offer and makes effective the earnest-money contract subsequently entered into between the plaintiff and the agency on March 9, 1960.

Section 9-06-04 of the North Dakota Century Code provides that an agreement for the sale of real property, or of an interest in real property, is invalid unless it, or some note or memorandum thereof, is in writing and is subscribed by the party sought to be charged, or by his agent. It further provides:

"4. * * * Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing subscribed by the party sought to be charged."

■ Generally, a real-estate broker with whom land is listed for sale by the owner has no authority to make contracts for sale which are binding on the owner in the absence of written authority, signed by the owner, empowering him to do so. Ballou v. Bergvendsen, 9 N.D. 285, 83 N.W. 10.

■ Thus the authority of a real-estate broker with whom lands are listed for sale does not extend to the signing of a contract of sale. The power to execute a contract of sale is an additional authority that must be expressly granted in writing.

■ It follows that, when the owner of real estate executes and delivers written authority to his broker for the sale of real estate and the instrument contains no further or additional authority than is common to such brokers, the broker has no authority to sign a contract for the owner. Brandrup v. Britten, 11 N.D. 376, 92 N.W. 453.

■ The plaintiff contends that the so-called listing agreement, executed by the owner in this case, not only is a written authority for the sale of such real estate but contains additional authority for the agent to execute the necessary contract of sale, by reason of the language used, which grants to the broker "the exclusive right to sell or contract to sell."

Whether this language gives to the broker more authority than that commonly given by a listing agreement need not, however, be decided on this appeal. In this case, the plaintiff and the broker actually entered into a subsequent earnest-

money contract which clearly shows that, if he did have the authority to bind the owner, the agent was not exercising or making use of such authority. Our statutes specifically provide that any instrument made within the scope of the authority of an agent, by which the agent intends to bind his principal, is binding on the principal if such intent (to bind his principal) is clearly inferable from the instrument. Sec. 3–03–04, N.D.C.C.

In the case before us, however, it is clear that the agent, the defendant Fisher-Foster Agency, did not intend to bind its principal, the owner of the real estate, even though the agency might have had authority to do so. Here, the contract signed by the agent and by the plaintiff provides: "It is especially understood and agreed that this sale is made subject to approval by the owner of such premises in writing, * * *"

Thus, even though the broker actually had the power to sign for the owner, where both parties specifically understand and agree that the sale shall be subject to the approval in writing of the owner, the authority which the broker has is not exercised. The fact that the broker actually might have had authority to bind the owner cannot be asserted by the plaintiff where both the plaintiff and the broker understood that the broker's authority was not being exercised and that the owner's approval of the sale was to be obtained in writing.

The plaintiff strenuously contends that the owner did give her approval in writing in her letter dated March 4, 1960, when she wrote to the broker, in regard to the plaintiff's offer to buy, " * * * I think it is all right * * *"

The force of plaintiff's argument is completely dissipated by the plaintiff's own testimony with reference to the signing of the earnest-money agreement. This agreement was drafted after the owner's letter stating, "I think it is all right," had been received by the broker and the plaintiff had been informed of its receipt. In spite of that letter, the plaintiff did not rely upon the authority given to the broker in the letter since the earnest-money agreement thereafter executed contained the specific provision that it was especially understood and agreed that the sale was made subject to the approval of the owner.

The record clearly shows that the plaintiff understood that the earnest-money contract was to be approved by the owner before it became effective. The manager of the plaintiff testified, with reference to this contract, three copies of which had been signed by him and left with the broker:

"Q. Did he say what he would have to do with them at all? A. He said he would send them in or take them in and get her signature.

"Q. Why did he have to have her signature on there? A. To complete the transaction, I guess.

"Q. In other words, she would have to have her signature on there before it was completed? A. According to him, yes.

"Q. And he told you so at that time that he would have to take them to Minneapolis? A. Yes, to get them completed.

"Q. In other words, you knew it wasn't completed until she signed it. He told you that he would have to take them with him? A. Yes."

Thus, from the plaintiff's own testimony, it is clear that plaintiff understood that there was to be no contract until it was signed by the owner. Plaintiff cannot now claim that it relied upon the defendant agency's authority to execute the contract as expressed in the owner's letter of March 4, 1960, because plaintiff's manager testified that he understood and knew that the owner's signature on the earnest-money

contract was necessary "to complete the transaction." If the plaintiff had relied upon the alleged approval of the owner contained in her letter of March 4, 1960, when she said, "I think it is all right," it certainly would not have been necessary to secure the owner's signature to complete the transaction.

All of the negotiations leading up to the contract of purchase were included in the earnest-money agreement of March 9, 1960. That agreement specifically provided, as the plaintiff well knew, that the agreement would have to be approved by the owner in writing.

For reasons stated herein, the judgment of the district court is affirmed.

In view of our decision in favor of the defendants Fisher-Foster Agency and Iva Tourangeau, the question of whether the defendant Fink is a good-faith purchaser becomes immaterial.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.