BALLOU, Respondent, v. CARTER, Appellant.

(137 N. W. 603.)

1. **Agency — Authority of Agent — Quitclaim Deed in Blank — Validity.**

   A quitclaim deed to land, executed by owner without the name of any grantee inserted therein, and delivered to her agent for sale of the land, was null and void, and did not confer authority on the agent to authorize a broker, acting solely through such agent, to bind the owner by a contract of sale.

2. **Brokers—Contract of Sale of Land—Authority—Specific Performance.**

   A broker, authorized by an agent for sale of land, to procure a purchaser, informed the agent that she had sold the land at price fixed, and requested the agent to answer by wire if he would accept same; the agent replying, "Smith offer accepted," and forwarded a quitclaim deed having no grantee's name therein, with note and mortgage to be signed by purchaser, to a bank in town where broker resided, no authority being given bank or broker to enter into any contract for the sale. **Held,** the broker had no authority in writing to execute the contract under which defendant claims for specific performance.

3. **Vendor and Purchaser—Terms of Sale—Meeting of Minds.**

   A purchaser of land agreed to pay the price asked, but demanded a warranty deed, also deeds from persons other than vendor, to perfect title, to which vendor or her agent had never assented; the contract, made by a broker who dealt solely with the agent, was never ratified. **Held,** there was no meeting of minds sufficient to establish a contract of sale.

   Whiting, J., concurring specially.

(Opinion filed October 1, 1912.)

Appeal from Circuit Court, Kingsbury County. Hon. ALVA E. TAYLOR, Judge.

Action by Elvira B. G. Ballou against W. B. Carter and others, to quiet title to land; defendant counterclaiming for specific performance under a contract of sale. From a judgment for

plaintiff, and from an order denying a new trial, defendant appeals.   Affirmed.

*William H. Warren* for Appellant.

In Johnson v. Dodge, 17 Ill. 433, it is said that authority from an owner of land to a general land agent to sell the land in question included the usual and necessary means to make a binding contract of sale in the name of the principal.   To the same effect. is Vanda v. Hopkins, I. J. J. Marsh, 285, 19 Am. Decs. 92; Smith v. Tate, 82 Va. 657; Yerby v. Grigsby, 9 Leigh 387; Haydock v. Stow, 40 N. Y. 363; Minor v. Willoughby, 3 Minn. 225; Jackson v. Badger, 35 Minn. 52, 26 N. W. 908; Pringle v. Spaulding, 53 Barb. 17; Rutenberg v. Main, 47 Cal. 213; Rosenbaum v. Belson, 2 Ch. 267; Smith v. Allen, 86 Mo. 178; Colvin v. Blanchard (Tex.) 106 S. W. 323; Winch v. Edmunds, 34 Colo. 359, 83 Pac. Rep. 632; Jasper v. Wilson, (N. M.) 94 Pac. Rep. 951; Degginger v. Martin (Wash.), 92 Pac. Rep. 674; Littlefield v. Dawson, 47 Wash. 644, 92 Pac. Rep. 428; Hopgood v. Corbin, 63 Iowa 218, 18 N. W. 911; Lyon v. Pollock, (S. C.) 99 U. S. 668, 25 L. Ed. 265; Bacon v. Davis, (al.) 98 Pac. Rep. 71; Wiggins v. Wilson (Fla.), 45 So. Rep. 1011; Smith v. Allen (Mo.), 86 Mo. 190; Glass v. Rowe (Mo.), 15 S. W. 340; Klemhans v. Jones, 37 U. S. App. 340; Warvelle on Vendors, Vol. I., Sec. 209.

Custom and usage of the trade or business in which the agent is engaged form part of his authority.   31 Cyc. 1330.

An agent to sell land has, however, by implication, authority to perform all acts necessary to effect a binding sale, for the rule of strict construction will not be allowed to defeat the very purpose of the agency.   31 Cyc. 1364; Bourke v. Van Keuren (Colo.), 36 Pac. Rep. 882.

The memorandum is adequate, although the letter or telegram is addressed to the writer's agent, or a third person.   20 Cyc. 254; Kenny v. Hews (Neb.), 41 N. W. 1006; Barry v. Coome (U. S.), 7 L. Ed. 295, and notes cited; 20 Cyc. 255; Hawkinson v. Harmon (Wis.), 35 N. W. 28.

A broker is the agent for both parties to make a memorandum of the contract charging either, and his book entries or sales, notes

of sales duly consummated by him, if otherwise sufficient, will satisfy the statute. However, an agent for one party only cannot bind the other party by making a memorandum. 20 Cyc. 256; Olson v. Sharpless (Minn.), 55 N. W. 125; Vendquist v. Perky (Neb.), 20 N. W. 301; Singleton v. Holl et al (Wis.), 64 N. W. 588.

However, a deed which has been delivered but which is formally defective may operate as a sufficient memorandum; and the deed of an agent who has authority to make a contract of sale but no authority to sign a deed may still be adequate as a memorandum of the contract. 20 Cyc. 257.

A signature to a memorandum in the name of the party to the contract, made in his presence and at his request, is an adequate signature. The agent must be a person not a party to the contract, else he cannot sign as agent. 20 Cyc. 267.

An agency is created if relations exist which will constitute an agency, although the parties may not so intend. The effect of such relations cannot be effected by the private intentions of the parties. Bradstreet Company v. Gill (Tex.), 2 L. R. A. 405; Secs. 1661, 1673 and 1675, Revised Civil Code South Dakota.

In this case H. S. Ballou had possession of the deed. Corey v. Hunter (N. D.), 84 N. W. 570; Hollingshead v. John Stuart Co. (N. D.), 77 N. W. 89; Parker v. Randolph et al, 10 S. D. 402, 73, N. W. 906.

Elvira B. G. Ballou is estopped from denying the authority exercised by her agent. 31 Cyc. 1219, 1226, 1235, 1238, 1239, 1240.

A principal may be bound by the appearance of authority which his negligent conduct of his business permits his agent to have. Columbia Mill Co. v. National Bank of Commerce, 53 N. W. 1061; 31 Cyc. 1238-1240, and cases cited; Neppoch v. Oregon Railway Co. (Ore.), 80 Pac. Rep. 482; Foss-Schneider Brewing Co. v. McLaughlin (Ind.), 31 N. E. 838; Wheeler v. McGuire (Ala.), 2 L. R. A. 80, and note; Garland v. Wells (Neb.), 18 Neb. 132; 16 Cyc. 773; Weaver v. Snively, 73 Neb. 35, 102 N. W. 77.

Conceding that H. S. Ballou had authority to act for his

mother, which cannot be questioned, this case cannot be distinguished from Farrell v. Edwards, 8 S. D. 425, 66 N. W. 812; Townsend v. Kenedy, 6 S. D. 47, 60 N. W. 164; McLaughlin v. Wheeler, 1 S. D. 497, 47 N. W. 816; Reid v. Kellogg, 8 S. D. 596, 67 N. W. 687; Aldrich et al. v. Wilmarth, 3 S. D. 523, 54 N. W. 811; Griggs v. Selden, 58 Vt. 561, 5 Atl. Rep. 504; Wheeler v. McGuire, (Ala.) 5 South. Rep. 190.

The sale was reported, and accepted by one whose authority the respondent is estopped to deny. A ratified act then becomes an authorized act. Hoyt v. Tuxbury, 70 Ill. 731; Roberts v. Hilton Land Co. (Wash.), 88 Pac. Rep. 837; Chappel v. McKnight, 69 Ill. 184; Vol. I. Warvelle on Vendors, Sec. 207.

A written offer may constitute a sufficient memorandum of the contract to charge the party making it if later accepted by parol. So a written acceptance of an oral offer may be an adequate memorandum to charge the acceptor. 20 Cyc. 254; 23 Am. & Eng. Ency. of Law, 902; Roby v. Cassitt, 78 Ill. 638; Butman v. Butman (Ill.), 72 N. E. 821.

When a contract is signed by one of the parties only, but is accepted and acted upon by the other party, it is just as binding as if it were signed by both of the parties. 9 Cyc. 300; Vol. II. Warvelle on Vendors, Sec. 898; Spolek v. Hatch, 21 S. D. 386, 113 N. W. 75.

This contract which the trial court found was not delivered, was dated, witnessed, acknowledged and duly recorded in the office of the Register of Deeds, as reference thereto will show. In fact its delivery was not even put in issue. We refer the Court to the following authorities to show there was clearly error. Sec. 533, Rev. Code Civil Pro., South Dakota.

A grant duly executed is presumed to have been delivered at its date. Sec. 923, Revised Civil Code, South Dakota; Sec. 927, Revised Civil Code, South Dakota.

*Horner, Martens & Goldsmith,* for Respondent.

Elvira B. G. Ballou never authorized H. S. Ballou by an instrument in writing to sell the land in question. Sec. 1238, 1311, Revised Civil Code; Dal v. Fischer et al, 20 S. D. 426.

Section 938 of our Revised Civil Code provides: "An estate in real property other than an estate at will for a term not exceeding one year can be transferred only by operation of law or by an instrument in writing subscribed by the party disposing of the same, or by his agent thereunto authorized by writing." · Lund v. Thackery, 18 S. D. 113.

We cite the following cases as sustaining our position; that where the statute requires the authority of an agent to sell land and execute contracts for the conveyance thereof to be in writing, any contract made by such agent whose authority is not in writing is void. Lund v. Thackery, supra; Dal v. Fischer, supra; Hickox v. Bacon, 17 S. D. 563; Ellis v. Wait, 4 S. D. 454; Moody v. Howe, 17 S. D. 455; Brandrup v. Britton, 92 N. W. (N. D.) 453; Hall v. Wallace (Cal.), 26 Pac. 360; Dickinson v. Wright, (Mich.) 22 N. W. 312; Chappell v. McKnight, 180 Ill. 570.

The agent Wilcox was never authorized to enter into a contract for the sale of the land. Lichtey v. Daggett, 23 S. D. 380; Purkey v. Harding et al, 123 N. W. (S. D.) 69; Brandrup v. Britton, 92 N. W. (N. D.) 453; Ballou v. Bergvendson, 83 N. W. (N. D.) 10; Watters v. Dancey, 23 S. D. 481; Riley v. Grant et al, 16 S. D. 553.

There never was a meeting of the minds between these parties. Richards Trust Co. v. Beach, 17 S. D. 432; Phelan v. Neary, 117 N. W. (S. D.) 142; Jepson v. Marohn et al, 22 S. D. 593; Stearns v. Clapp, 16 S. D. 558; Babcock v. Ormsby, 100 N. W. (S. D.) 759.

Neither Elvira B. G. Ballou or H. S. Ballou ever ratified the Wilcox contract. Sec. 1668 of the Revised Civil Code; Purkey v. Harding et al, 23 S. D. 632.

"A person dealing with an assumed agent must ascertain at his peril the existence of an agency and the extent of his authority." Ellis v. Wait, 4 S. D. 454; Kirby v. Scraper Co., 9 S. D. 623; Fargo v. Cravens, 9 S. D. 646.

CORSON, J. This is an appeal by the defendant F. M. Smith from a judgment entered in favor of the plaintiff and from the order denying a new trial. The action was instituted by the

plaintiff to quiet title to a quarter section of land in Kingsbury County, under the provisions of chapter 194, Session Laws of 1903, as amended by chapter 81, Session Laws of 1905, and is in the usual form. The answer of the appellant F. M. Smith, admits that the plaintiff, is the record owner in fee simple of the land in controversy; admits that the plaintiff is, and has been at all times mentioned in the compalint, in the possession of said premises, but denies that the plaintiff was entitled to possession; admits that the records in the office of the register of deeds of Kingsbury County show that the appellant claims some interest in the above-described real estate. For a counterclaim the appellant alleges that the plaintiff, through her authorized agent, entered into a contract with the appellant for the sale of said premises to him for the purchase price of $2,200, of which $100 was paid in cash, $1,100 to be paid in 30 days, and the balance was to be paid by a mortgage; that the sale was evidenced and consummated by a contract for deed, executed by the plaintiff, by her agent, C. H. Wilcox, on the 4th day of November, 1903, and a copy of which was annexed to defendant's counterclaim and made a part thereof; that the plaintiff, through her agent, refused to execute a usual and sufficient warranty deed to said premises, as she had agreed to furnish, and demands judgment that the plaintiff's complaint be dismissed, and that the court declare a specific performance of said contract, and that the plaintiff deliver to the defendant a sufficient warranty deed upon his compliance with said contract; that the plaintiff be required to account for the rents and profits of said land since the date of said sale to the appellant. Plaintiff filed a reply to said counterclaim, denying substantially all the allegations therein.

In order to a proper understanding of the issues presented, it is necessary to make a brief statement of the facts, which are in substance as follows: The plaintiff is an elderly lady residing in North Orange, Mass. In the year 1903 she, being the owner of the premises in controversy, executed to her son, H. S. Ballou, doing business in Boston as an investment banker under the name of H. S. Ballou & Co., a quitclaim deed to the premises in con-

troversy, with the name of the grantee in blank. One C. H. Wilcox, a female broker and real estate agent in Minneapolis, having had some business transactions with H. S. Ballou, on the 18th of July, 1903, wrote the said H. S. Ballou as follows: "Make me the lowest price you will let the Kingsbury lands go for, one-half cash, and give me an option of 30 doys, and I have some men from Illinois that I will put in my time specially for you and close them out. Will want 5 per cent commission only."

The answer to this letter does not appear in the abstract; but on October 29, 1903, she again wrote to H. S. Ballou & Co.: "I have this day sold your land in Kingsbury. * * * If sale is accepted wire me on receipt of this letter. * * * I will expect commission as this is the full price I have sent you, $2,200." To this letter H. S. Ballou & Co. telegraphed as follows: "Smith offer accepted. Papers sent to Bank of Commerce Tuesday."

A quitclaim deed was forwarded by H. S. Ballou to the bank at Minneapolis, together with mortgage, coupon notes, etc., for execution; but the deed was objected to by said appellant, on the ground that by the terms of his contract he was to have a warranty deed, and that there were several defects in the title. Following these objections was a voluminous correspondence, extending over several weeks, resulting in what appears to be an abandonment of the purchase by the appellant, as appears by the following letter, bearing date of December 5, 1903, from F. M. Smith to H. S. Ballou: "Replying to your letter regarding the Kingsbury County land, will say that I will not pay $200.00 more than the price agreed upon. I bought the land of Mrs. Wilcox for $2,200.00 making a payment of $100.00, and wrote you later that I was ready to accept land at that price as soon as title was perfected. Your last letter asking $2,400.00 for it was forwarded to Mrs. Wilcox asking her to return the $100.00 to me. I do not care to purchase at this price and have since bought another piece, so could not use it now at the former price at which I bought it."

A careful examination of the correspondence fails to show any authority from H. S. Ballou, or H. S. Ballou & Co., to Mrs.

2—Vol. 30, S. D.

Wilcox to execute the contract under which F. M. Smith claims title, or any ratificaion of the contents thereof, either by the plaintiff, or by H. S. Ballou or H. S. Ballou & Co. No useful purpose would be served by reproducing this correspondence; for, as before stated, it is very voluminous, extending over 30 pages or more of the printed abstract.

The case was tried to the court without a jury, and the court found, among other things: "That no written instrument or other writing, in any manner referring to the said real estate, has ever been signed, executed, or made by the plaintiff, Elvira B. G. Ballou, excepting only the quitclaim deed, referred to in the seventh finding herein. That on or about the date stated therein one C. H. Wilcox, a defendant herein, made and isgned an instrument in writing, in words and figures as follows: (Here follows copy of contract set up in counterclaim.) That said written instrument was filed for record in the office of the register of deeds of said Kingsbury County by the defendant C. H. Wilcox on the 3rd day of December, 1903, and that said written instrument has never been delivered to the appellant F. M. Smith. That no money or property whatever has been paid to the plaintiff by or for defendant F. M. Smith as a part of the consideration of the claimed sale of said real estate. That the plaintiff has never in any manner ratified or acted upon or under the aforesaid written instrument. That the plaintiff is in the possession of said real estate, and the whole thereof, and that none of the defendants have ever been in possession of said real estate or any part thereof.

From the foregoing findings of fact, the court concludes as a matter of law: That the written instrument set out in the answer and in the ninth finding of fact, and the inustrument sought to be specifically enforced, is not binding upon the plaintiff, for the reason that said instrument purports to be a unilateral contract for the sale of real estate, executed by the plaintiff in favor of the appellant, but that the same was never delivered to said appellant. That said written instrument purporting to be a contract for the sale of real estate, executed by the agent, C. H. Wilcox, with authority in writing, is invalid and unenforceable as against

the plaintiff, for the reason that said C. H. Wilcox had no authority in writing to execute said contract, or any other contract subscribed by the plaintiff, the party sought to be charged. That the defendants and none of them have any right to the real estate or any part thereof. That the plaintiff is the owner in fee simple of said real estate, and entitled to a decree quieting her title thereto.

A motion for new trial was made and denied, and an appeal taken to this court by the said F. M. Smith, as before stated.

It is contended by the appellant that the execution of the quitclaim deed in blank by the plaintiff and delivery by her to her son, H. S. Ballou, constituted an authority in writing, under and by virtue of which he could and did authorize the agent, C. H. Wilcox, to execute the contract under which the appellant claims to be entitled to specific performance.

It is insisted, however, on the part of the plaintiff that "Elvira B. G. Ballou never authorized H. S. Ballou, by an instrument in writing, to sell the land in question." (2) "The agent, Wilcox, was never authorized to enter into a contract for the sale of the land." (3) "There was never a meeting of minds between these parties." (4) "Neither Elvira B. G. Ballou nor H. S. Ballou ever ratified the Wilcox contract."

[1] The contention of the appellant that the plaintiff, by the execution of the quitclaim deed to H. S. Ballou, with the name of the grantee in blank, conferred authority upon him to enter into the contract under which the appellant claims to enforce specific performance is clearly untenable, as the quitclaim deed so executed by the plaintiff was null and void under the decisions of this court in the cases of Lund v. Thackeray, 18 S. D. 113, 99 N. W. 856, and Dal v. Fischer, 20 S. D. 426, 107 N. W. 534.

In the former case this court said: "It is contended by the appellants that an instrument in writing purporting to convey land, executed and acknowledged by the grantor, in which the name of the grantee is not inserted, is absolutely void and conveys no title, and that under the Code of this state an agent, not having authority in writing, is not authorized to insert the name of a grantee therein, and that Hunt, therefore, who received this

deed from the grantor with no name of a grantee therein, was not authorized to insert such name, and that he could confer no authority upon either the bank at Mitchell, or the bank at Watertown, to insert the name of a grantee and deliver the deed to the person so named, where the grantee whose name is inserted in the deed had full knowledge of all of the facts in the case. The authorities quite generally agree upon the proposition that such an instrument is invalid for any purpose until the name of a grantee is inserted therein. * * * No one would claim, we apprehend, that in this state an agent, not authorized so to do by writing, could convey the real property of his principal. If he could not legally execute a deed in such a case, upon what principle of law can it be held that he may be authorized by parol to do any act essential to the transfer of property to a grantee having full knowledge of the fact that the instrument was executed with the name of the grantee in blank?"

In the case of Dal v. Fischer, supra, this court in discussing a similar question, reaffirming the case of Lund v. Thackeray, supra, said: "The writing delivered to Fischer in Chicago was not subscribed by the plaintiff. It does not purport to be her contract as a principal. This is not a case where one who is present directs another to subscribe his name to an instrument. The evidence conclusively shows that the person who executed the contract was not authorized to do so in writing; hence his act was of no validity, unless subsequently ratified in the manner that would have been necessary to confer original authority. The plaintiff never accepted any benefits of her son's act. The attorney who sent the deed and abstract to the bank was not authorized to do so in writing. Such deed did not contain the name of any grantee. So the plaintiff did not, in writing or otherwise, ever agree or offer to sell the land to Fischer; nor did she ever, in writing or otherwise, ratify her son's agreement to do so."

It is quite clear, therefore, that the court in following these decisions properly held that the quitclaim deed, executed by the plaintiff in blank as to the grantee, did not confer authority in writing upon her son, H. S. Ballou, to execute the contract under

which the appellant claims; and hence he could not, in any event, confer such authority upon Mrs. Wilcox.

[2] But assuming that such authority was conferred upon Mr. Ballou by the plaintiff, Mrs. Wilcox was not authorized by Mr. Ballou to enter into the contract, as it appears from her letter of October 29, 1903, heretofore quoted, that she sold the Kingsbury County land at the price of $2,200.00, and requested Mr. Ballou to answer by wire if he would accept the same. To which he replied by wire, "Smith offer accepted." Following this telegram, Ballou forwarded a quitclaim deed, note, and mortgage, to be signed, to a bank at Minneapolis; but in neither the telegram nor the letter to the bank was any authority conferred upon Mrs. Wilcox to enter into any contract with Smith for the sale of the property.

This court, in Lichty v. Daggett, 23 S. D. 380, 121 N. W. 862, held, as appears by the headnote, that "merely listing land with brokers for sale at a stated price only authorizes the brokers to find a purchaser for the owner, and not to make any contract with the purchaser to convey the property, so that a letter from the owner to brokers, stating that his price for the land was a certain sum, payable as provided, and requesting the brokers to let him hear from them, did not authorize the brokers to execute a contract with a purchaser for the sale of the land."

Clearly, under the decision of this court in that case, Mrs. Wilcox had no authority in writing to execute the contract under which the defendant claims to be entitled to a specific performance. See authorities stated in that opinoin.

[3] It is further disclosed by the correspondence that the terms of the sale were never agreed to by the parties. As will be observed, F. M. Smith claimed that he was entitled to a warranty deed and deeds from other parties, in order to perfect the title, to which neither the plaintiff nor H. S. Ballou ever assented; and, as before stated, the contract was never ratified by the plaintiff or by the said H. S. Ballou. There was therefore never a meeting of the minds of the respective parties as to the terms of the sale. It is quite clear, therefore, that under no view of the case was the appellant entitled to the enforcement of specific performance

of the alleged contract; and the court's findings, therefore, were clearly sustained by the evidence, and its conclusions fully justified by its findings.

The case was ably presented by the respective counsel, both orally and in their printed briefs; but we have not discussed many points presented, for the reason that such discussion was not, in the view of this court, necessary to the decision of the case. They have not been overlooked, however, but have been fully considered in the determination of the case.

Finding no error in the record, the judgment of the trial court and order denying a new trial are affirmed.

Whiting, J.   While I concur in the conclusion reached by my colleague, namely that the judgment appealed from should be affirmed, yet I would base such conclusion upon the fact that the quitclaim deed was a nullity.   It is conceded by the appellant that such deed, with no grantee therein named, was a nullity as a conveyance; but appellant contends that such deed was admissible in evidence to establish the written authority of the agent, H. S. Ballou.   I believe that such a deed might form part of a written memorandum or contract as would be proof of written authority sufficient to satisfy the requirements of the statute of frauds; but in this case there were no other writings which could be connected with such a deed, and the deed alone was certainly insufficient to establish written authority in H. S. Ballou to execute such a contract as the one given Smith by Mrs. Wilcox.   If no such authority has been shown in H. S. Ballou, certainly H. S. Ballou could not confer it upon Mrs. Wilcox.   It surely could not be claimed that said quitclaim deed, standing alone established authority in H. S. Ballou to contract for the giving of a warranty deed.

It is also clear that Smith rescinded any contract he had entered into, which rescission took place several years before this action was brought.   Appellant complains of certain findings in relation to the delivery of and nature of the contract under which appellant claims; but, conceding that such contract was duly delivered and became a binding contract upon Smith by his accept-

ance of same, yet, under the views above expressed, it would avail Smith nothing.

The only question left relates to Smith's right to recover $100 from plaintiff. While no written authority is shown to have been vested in H. S. Ballou, it does appear he had oral authority to sell this land; and he probably had oral authority to receive and accept money upon a sale of this land. It therefore follows that if H. S. Ballou in person, or through a subagent duly author-ized, had received money upon a written contract entered into by such agent or subagent for the sale of this land. the plaintiff would be holden for the return of such money upon refusal to carry out the contract, as there is nothing in the statute of frauds releasing a person from liability for money received by an agent who has oral authority to sell land and receive payment therefor. In such a case an action for money had and received would surely lie. But I am unable to find any evidence of authority given to Mrs. Wilcox to receive money for either of the Ballous. Certainly when one authorizes another to find a purchaser for lands, or even authorizes him, as agent, to enter into a contract for the sale of land, it does not carry with it authority to receive the purchase money as agent. If this were true, real estate owners would hesitate to list their lands for sale.