JOSEPH HOLMES, Appellant, v. ANNIE S. REDHEAD.

**Principal and Agent:** IMPLIED AUTHORITY. One authorized by the owner to negotiate a sale or exchange of real estate is not thereby invested with an implied or apparent authority to make a binding contract of sale for his principal. Citing *O'Rilley v. Kein* (N. J. Err. App.) 34 Atl. Rep. 1073; *Duffy v. Hobson*, 40 Cal. 240; *Everman v. Herndon*, 71 Miss. 823; *Halsey v. Monteiro*, 92 Va. 581.

*Appeal from Polk District Court.*—HON. T. F. STEVEN-
SON, Judge.

FRIDAY, JANUARY 21, 1898.

ACTION in equity to enforce specific performance of
a contract to convey real estate. Decree for defendant.
Plaintiff appeals.—*Affirmed.*

*J. L. Carney* for appellant.

*St. John & Stevenson* for appellee.

WATERMAN, J.—The contract which is set up as a
basis for the relief sought by plaintiff is in writing, and
as follows:

"Des Moines, Iowa, December 22, 1894.
"List of Redhead's Property Offered in Exchange for
Holmes Vinegar Plant:

| | |
|---|---:|
| Double brick flat | $ 4,000 |
| Bixby house, barn, and land | 4,000 |
| Watson house and lot | 2,000 |
| Lomley house and ground | 1,500 |
| 5 lots in K, 14 lots in J, 10 lots in S, Redhead's addition | 5,800 |
| Lots 23, 22, 21, 20, 19, 18, 16, 15, Block Add | 6,200 |
| Lots 8, 9, 10, 11, 12, and 14, Block A, East Park Place | 4,300 |
| | $27,800 |

"The above property to be free from incumbrance,
except $2,000 on the double brick flat. Said Redhead
agrees to take in even exchange Holmes vinegar plant,
consisting of the lot on which it stands, sixty feet by
one hundred and eighty feet, and all of the permanent
fixtures used in the manufacture of vinegar, pickles,
yeast, and cider; also, a feed lot, which contains about

two and one-half acres, four horses and harness, and two wagons, all of which is free of incumbrance. Said Holmes property is in Marshalltown, Iowa, and property of said Redhead is located in Des Moines, Iowa.

"Annie S. Redhead,

"By George Redhead.

"Joseph Holmes.

"Des Moines, December 22, 1894. Received on the within contract $1, to apply on the within trade.

"George S. Redhead."

We are confronted at the outset with an issue of fact presented by the answer, the determination of which is decisive of this case: Was the writing in question the contract of the defendant? It is obvious that, to answer this interrogatory, we must ascertain whether George S. Redhead, who was the son of defendant, had authority to affix his mother's name thereto. The testimony is not materially conflicting. Many facts are not in dispute. We deem it unnecessary to set them forth in detail, but will give our conclusions.

Annie S. Redhead, the defendant, is a widow, and derived title to the real estate involved, with considerable other property, by devise from her husband. She is not a woman of much business capacity or experience, and has been dependent upon others for advice and assistance in the management of her estate. Her son George S. had charge of the making of leases to her tenants and the collection of rents, but, when real property was sold or other transactions of magnitude undertaken, she usually went to others for advice, and principally to Mr. St. John, her attorney. It seems that negotiations were begun between plaintiff and George S. Redhead looking to the exchange of some of defendant's real estate for a vinegar plant belonging to plaintiff, and which was located in Marshalltown, Iowa. After a time these negotiations culminated in a visit of plaintiff to Des Moines, where the Redheads resided. It is

at this time that defendant first appears in connection with the matter. Plaintiff went with George to his mother's house for dinner. The parties do not quite agree as to what occurred at this time, but, stating it most favorably for plaintiff, we think defendant can be held to nothing more than what follows: She talked with plaintiff about the contemplated exchange, but said nothing as to the kind or amount of property that she was willing to put in. She spoke of her son Herbert going into business in Marshalltown; hoped the busi-. ness would be profitable, and that he would succeed, and said that George would show the property "they had in exchange for this." George and plaintiff left the house soon after, and together looked at the Redhead real estate. The next day, plaintiff went with another person to see the property, but he had no further talk with Mrs. Redhead. After some further negotiations with the son, the latter agreed that the property described in the contract should be given for the vinegar plant, and went alone to consult his mother about it before completing the trade. Nothing material in support of plaintiff's claim occurred at this interview. George says in cross-examination that he informed her in some measure as to the details of the exchange, and that she neither gave her assent nor refused it. But it does not appear that she knew or had reason to suspect at this time that he intended entering into a contract in her name. On the contrary, we are justified in finding, when we consider all the evidence, that from the first she insisted that nothing conclusive be done without the approval of Mr. St. John, and this was never had. Indeed, he explicitly advised against the contemplated trade when he was consulted, shortly prior to the interview between George and his mother to which we have just alluded. Under these circumstances the instrument that is the basis of this action was executed, and we may concede for present purposes that it is in

form a binding contract of sale. Taking the case as plaintiff makes it, and we think there is a complete absence of any showing of authority in George S. Redhead to bind the defendant by this agreement. Plaintiff does not claim express authority, but he does insist that there was implied or apparent authority. This, we think, cannot be successfully maintained. That the son had a right to negotiate for a sale or exchange in this case is true, but plaintiff had no reason to infer anything further from this fact. A property owner who authorizes a broker to procure a purchaser gives to the broker authority to negotiate for a sale, but it would be an unusual rule, and contrary to the current of decisions, to hold the broker's acts in this direction to be legally sufficient to warrant a belief in one dealing with him that such agent had a right to make a binding contract of sale for his principal. *Furst v. Tweed,* 93 Iowa, 300; *O'Reilly v. Keim,* N. J. Eq. & App. (34 Atl. Rep. 1073); *Duffy v. Hobson,* 40 Cal. 240; *Everman v. Herndon,* 71 Miss. 823 (15 South. Rep. 135); *Halsey v. Monteiro,* 92 Va. 581 (24 S. E. Rep. 258). The decree below was right, and will be AFFIRMED.