## J. R. Brandrup vs. Riley T. Britten.

**Contract to Sell Realty—Authority of Agent.**

> In this state, under the provisions of sections 3887, 3960, Rev. Codes, it is essential to the validity of a written contract for the sale of real property, which is signed by an agent of the vendor, that the authority of such agent to execute it shall be in a writing subscribed by the principal.

**Agent's Power to Sign.**

> The ordinary authority of a real estate broker with whom lands are listed for sale does not extend to signing a contract of sale, and this is true whether the authority of the broker is conferred by writing or by parol. The authority to execute a contract of sale is an additional authority. It follows, therefore, that when a real estate owner executes and delivers a written authority for the sale of real estate to real estate brokers, and the instrument confers no further or additional authority than is common to such brokers, they have no authority to sign contracts for the owner. It is *held* that the written instrument set out in the opinion conferred upon the defendant's agents only the ordinary authority of real estate brokers, and did not authorize them to sign the defendant's name to the contract of sale which is sought to be enforced in this action.

Appeal from District Court, Richland County; *Lauder, J.*

Action by J. R. Brandrup against Riley T. Britten. Judgment for defendant, and plaintiff appeals. Affirmed.

*George W. Freerks* and *A. J. Bessie,* for appellant.

*Morphy & Propper,* for respondent.

YOUNG, J. The plaintiff in this action seeks to compel the defendant to specifically perform a certain written contract alleged to have been executed by the defendant, and by the terms of which defendant agreed to sell and convey to the plaintiff certain real estate, consisting of 640 acres, situate in Richland county. The trial court found that the contract in question was not executed by the defendant, or by his authority, and directed the entry of judgment dismissing the action. Plaintiff has appealed from the judgment, and demands a review of the entire case in this court.

The facts which are material to a determination of the questions involved are as follows: On November 6, 1901, the plaintiff, who was then, and now is, the owner of the real estate in question, listed the same for sale with Meis & Orcutt, real estate agents doing business in the city of Wahpeton. The listing contract was in writing. Omitting the description of the property, it is as follows: "I hereby grant to H. B. Meis and Orcutt the sale of the following described property for six months at the price and upon the terms below mentioned, with the express understanding that the said H. B. Meis shall use all diligence and make active and strong efforts to sell said property. * * * Price, net to me, $9,000, not less than

$3,000 cash, and assume mortgage now on land. R. T. Britten."
Prior to the expiration of their authority to sell, said firm found a
purchased in the person of J. R. Brandrup, the plaintiff in this ac-
tion; and on Sunday, April 20, 1902, H. B. Meis, a member of said
firm, accompanied him to the residence of the defendant, on said
land, and introduced him as a prospective purchaser. He also in-
formed defendant that he was at liberty to negotiate with the plain-
tiff directly, stating that the commission of his firm would be paid
by the plaintiff. As a result of the negotiations then had, an oral
agreement was reached between the plaintiff and defendant for the
purchase and sale of the real estate in question, which oral agree-
ment embraced a number of details and conditions which were not
provided for in the listing contract hereinbefore set out. The sum
of $10 was paid to the plaintiff as earnest money. It was also agreed
that the defendant would go to Wahpeton within a few days there-
after, and complete the transaction. The defendant went to Wah-
peton on the following Wednesday, but he then declined and refused
to carry out the oral agreement entered into on the Sunday previous,
and still refuses to do so. The $10 received as earnest money was
tendered to Meis & Orcutt, and, upon their refusal to receive the
same, was deposited by the defendant in a bank at Wahpeton to the
credit of the plaintiff, and a notice served, stating the fact of such
deposit. The defendant at the same time served notice upon Meis
& Orcutt, and also upon certain other real estate agents with whom
he had listed his property, withdrawing it from market. Before
the service of such notice of withdrawal, however, and on the Mon-
day previous, Meis & Orcutt had accepted a further payment of $100
from the plaintiff on the purchase price of the land, and, assuming
that they had authority to bind the defendant, joined the plaintiff
in the execution of the following instrument, which is the contract
sought to be enforced: "Wahpeton, N. D., April 21st, 1902. Con-
tract and agreement made and entered into by and between R. T.
Britten, of N. D., party of the first part, and J. R. Brandrup, of
Mankato, Minnesota, party of the second part, witnesseth: That in
consideration of $110, in hand paid by party of the second part, the
party of the first part has this day sold to the party of the second
part the following described land, viz: The S. E. ¼ section 31, the
S. ½ of section 32, and the S. W. ¼ of section 33, in township 129
north, of range 48 west, for $9,000.00, to be paid as follows: $2,890
cash; balance over present incumbrance to be paid as follows: in six
annual payments, at the rate of six per cent. interest. The party of
the second part has the privilege of paying all or any part of said
sum or sums at any time. The party of the second part is to have
one-half of all crops grown on said land during the year 1902, in-
cluding hay, and is to pay one-half of the machine threshing bill,
and to pay for half of the twine used in harvesting said crop. R. T.
Britten, by F. Orcutt and H. B. Meis, Agents. J. R. Brandrup.
Witness: F. Orcutt. H. B. Meis."

Is this defendant's contract? It will be seen that it was not signed by him in person. The question, then, is whether Meis & Orcutt had authority to sign it for him. Counsel for plaintiff contend that they had such authority under the written agency contract hereinbefore set out. Counsel for respondent, on the other hand, contend: (1) That said contract of agency only conferred upon Meis & Orcutt the authority ordinarily possessed by real estate brokers, and that it did not empower them to make a written contract which would bind their principal; (2) that, even if it did confer authority to execute a contract binding upon their principal, the contract in question was beyond the authority given, for the reason that it embraced a number of provisions which were not set out in the listing contract; and further, (3) that their agency was relinquished and terminated by the acts of the agents themeselves prior to the execution of the contract in question, namely, on the previous Sunday, when they brought the plaintiff and defendant together for the purpose of concluding the negotiations. We shall have occasion to consider only the first of these contentions. The trial court held, as a matter of law, "that the said firm of Meis & Orcutt had no authority to sign the said contract dated April 21, 1902, and the said defendant is not bound thereby." This conclusion is, we think, entirely sound, and must be sustained. In this state it is essential to the validity of a written contract for the sale of real property signed by an agent that the authority of the agent to sign the same shall be embodied in a writing subscribed by his principal. Section 3887, Rev. Codes, declares that certain agreements which are therein enumerated are invalid unless in writing, signed by the party to be charged or his agent. Among these are agreements "for the sale of real property or of an interest therein," and said section further provides that "such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged." Substantially the same requirements are repeated in section 3960, Id., which provides that "no agreement for the sale of real property or of an interest therein, is valid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or his agent thereunto authorized in writing." It is not contended that Meis & Orcutt had any further authority to sign the defendant's name to the contract in question than was given by the listing contract hereinbefore set out. Does this writing confer such authority? We are clear that it does not. It will be seen upon inspection that it contains no language which, in terms or by fair inference, authorizes the real estate brokers therein named to execute contracts or conveyances on behalf of their principal. It is patent that it confers upon them no further or greater authority than is commonly given to real estate brokers with whom land is listed for sale. And it is well settled that the agency of such persons is limited to finding purchasers who are acceptable

to vendors, or who are prepared to comply with the conditions of sale proposed by the vendors to their brokers, and, in the absence of express authority, does not extend to signing contracts of sale or conveyances on behalf of their principal. That was the conclusion reached by this court, after a careful review of the authorities, in the case of *Ballou* v. *Bergsvendsen,* 9 N. D. 285, 83 N. W. Rep. 10, in which this question was directly involved. We quote the following from the opinion in that case: "It is well settled that their authority does not extend to binding their principals by contracts of sale, but merely to procuring purchasers for the property listed with them, who will be acceptable to the owners. *Coleman* v. *Garrigues,* 18 Barb. 60; *Glentworth* v. *Luther,* 21 Barb. 145; *Morris* v. *Ruddy,* 20 N. J. Eq. 236; *Duffy* v. *Hobson,* 40 Cal. 240, 6 Am. Rep. 617; *Armstrong* v. *Lowe,* 76 Cal. 616, 18 Pac. Rep. 758; *Siebold* v. *Davis,* 67 Iowa 560, 25 N. W. Rep. 778; *Stewart* v. *Pickering,* 73 Iowa 652, 35 N. W. Rep. 690. In *Halsey* v. *Monteiro* (Va.) 24 S. E. Rep. 258, the court said: 'A real estate broker or agent is defined to be one who negotiates the sale of real property. His business generally is only to find a purchaser who is willing to buy the land upon the terms fixed by the owner. He has no authority to bind his principal by signing a contract of sale. A sale of real estate involves many things besides fixing the price. The delivery of the possession has to be settled; generally, the title to be examined; and the conveyance, with its covenants, to be agreed upon and executed by the owner,—all of which require conference and time for their completion. They are for the determination of the owner, and do not pertain to the duties, and are not within the authority, of a real estate agent. For obvious reasons, therefore, the law wisely withholds from him any implied authority to sign a contract of sale on behalf of his principal.' See, also, *Holmes* v. *Redhead* (Iowa) 73 N. W. Rep. 878; *Everman* v. *Herndon* (Miss.) 15 South. Rep. 135." A real estate broker may be given authority to execute contracts for his principal, but it is an additional authority. The instrument under consideration does not confer any such additional authority. It merely "grants" to the real estate brokers "the sale" or the selling of the land for a limited period, and, for the guidance of such brokers, it states the total net sum which the principal will accept, and the amount of cash payment which he will exact in case of a sale. As will be seen by an examination of the instrument, the details essential to the consummation of a sale are omitted. It does not provide the length of time the deferred payments are to run, or how they are to be divided, or as to the rate of interest to be charged, or as to whether a deed is to be given to the purchaser, and a mortgage to secure the deferred payments, or as to whether any deed shall be executed prior to full payment of the purchase price. These omissions tend strongly to show that it was the intention of the parties to the instrument that the sale was to be approved, and the contract of sale executed, by the principal,

and not by the brokers. And such, as we have seen, was the construction placed upon it by the plaintiff and the brokers in conducting the negotiations with the defendant on the Sunday preceding the execution of the contract. The fact that the writing grants "the sale" of the premises to Meis & Orcutt does not mean that they had authority to sign contracts of sale. It has been held in numerous cases, where express authority was given to real estate brokers "to sell" real estate, that the language did not authorize them to execute contracts or conveyances. Such was the holding in *Duffy* v. *Hobson,* 40 Cal. 240, 6 Am. Rep. 617, in which one Atkins, who had authority to sell his principal's real estate, had signed a contract of sale to one Duffy in behalf of Hobson, his principal. In that case the court said: "We are of opinion that the authority given to Atkins to sell the property was not sufficient to authorize him to execute a contract of sale to Duffy in the name of Hobson, or to sign the name of the latter to any contract of sale. We think that it was no more than a mere authority from Hobson to find him a purchaser at the price of $2,000. This is the settled construction put upon the employment of professional brokers 'to sell' or 'to close a bargain' concerning real estate, and we know of no reason why the same language employed to express the authority of any other agent 'to sell' should have a more extended meaning. Besides, a sale of real estate involves the adjustment of many matters in addition to fixing the price at which the property is to be sold. The deed of conveyance may be one with full covenants of seisin and warranty, or only those covenants imported by the use of the words, 'grant, bargain, and sell' under our statute, or it may be quit-claim merely. The vendor may be unwilling to deal with a particular proposed purchaser on any terms. He may consider him pecuniarily unable to comply with the contract, even if the title prove satisfactory; and he may decline to bind himself to convey to such a purchaser at the end of the time necessary to examine the title, because he might thereby in the meantime lose an opportunity to sell to some other person who might desire to purchase, and in whose good faith and ability to pay he reposed entire confidence. All these and many other like considerations might, and usually do, arise in the mind of the vendor. Now, a mere authority 'to sell' can hardly confer power upon the agent to determine all these matters for his principal, so as to bind him by his determination. And yet, unless the agent do have such power, he cannot make a definite contract, or one that could be said to have the certainty requisite to deprive the principal of his option to ultimately decline to make the sale. To give to the mere words 'to sell' such a broad signification as that would be to invest the agent with powers of that ample and discretionary character usually only conferred with caution, and by means of a general letter of attorney, where the terms are distinctly expressed." In *Armstrong* v. *Lowe,* 76 Cal. 616, 18 Pac. Rep. 758, Cook & Henderson, real estate brokers, had signed a contract of

sale for their principal, pursuant to the following written authority: "Cook & Henderson, real estate agents: You are hereby authorized to sell my property, and receive deposit on same, situated in * * * county of San Luis Obispo, * * * for $200 per acre, cash." The court said: "The sole question in this case is whether the real estate broker whom the defendant employed 'to sell' certain real property had authority to execute a contract to convey. We think that, upon the authority of *Duffy* v. *Hobson,* 40 Cal. 240-245, 6 Am. Rep. 617, it must be held that they had not." *Grant* v. *Ede,* 85 Cal. 418, 24 Pac. Rep. 890, 20 Am. St. Rep. 237, is to the same effect. The rule is the same in New Jersey. In that state an agent may be authorized by parol to enter into a written contract which will bind his principal to convey real estate. It is held, however, that authority to sell, without more, will not authorize the agent to sign a written contract for his principal. In *Milne* v. *Kleb,* 44 N. J. Eq. 378, 14 Atl. Rep. 646, the court said: "Authority to make or sign a written contract is not conferred, where the thing to be sold is land, by giving an agent power, by parol, to sell. Chancellor Zabriskie, in *Morris* v. *Ruddy,* 20 N. J. Eq. 236, 238, said, following the rule adopted by the courts of New York, that 'giving authority to sell does not, by force of the terms, or by their general acceptation, give authority to sign the vendor's name to a contract. And in the case of lands it is not wise to extend their meaning by construction.' Mr. Justice Brown had previously, in *Hedden* v. *Shepherd,* 29 N. J. Law, 334, 345, said substantially the same thing. Both of these cases are cited with apparent approval by Mr. Justice Magie in pronouncing the opinion of the court of errors and appeals in *Young* v. *Hughes,* 32 N. J. Eq. 372, 383. In view of these judicial utterances, I think this court is bound to regard the rule above stated as established. The same doctrine has been recognized in England." On this point, in 1 Warv. Vend. 250, that author says: "There is an important distinction between an authority to find a purchaser and an authority to execute a contract of sale, which is constantly recognized and applied by the courts, and specific performance has often been refused where the transaction disclosed that the agent's powers were limited to the mere finding of a purchaser. Thus the expression, 'I will sell,' or its equivalent, accompanied by a specification of terms, does not confer any authority on an agent to make a contract of sale." Mechem on Agency states the same rule at section 966. In this case, as we have seen, the written authority which the defendant gave to Meis & Orcutt was merely the authority commonly possessed by real estate brokers, and nothing more. It did not, therefore, authorize them to sign the contract in question. The statutes of this state declare that contracts signed as this one was are invalid.

It follows that the judgment of the district court must be affirmed, and it is so ordered. All concur.