H. E. NELSON, Plaintiff and Appellee, v. WESTERN UNION TELEGRAPH COMPANY, Defendant and Appellant.

New trial: DISCRETION: REVIEW. The ruling upon a motion for new
1    trial involves the exercise of discretion, and the action of the trial court will not be disturbed unless abuse of discretion is shown. However such discretion is legal in character, and where the precise ground on which the motion is based is stated the appellate court will determine whether there has been an abuse of discretion.

Agency: SALE OF REAL PROPERTY: SCOPE OF POWER. Authority to find
2    a purchaser for property does not confer power upon the broker to make a contract.

Same: NEW TRIAL. Where an agent had authority simple to find a
3    purchaser but not to make a contract of sale, and he submitted to a prospective purchaser a proposition different from that which the owner had authorized, he acted in excess of his power, and acceptance of the proposition by the purchaser was not binding on the owner. In such case a directed verdict for defendant was properly set aside and a new trial ordered.

*Appeal from Webster District Court.*—HON. CHARLES E. ALBROOK, Judge.

TUESDAY, NOVEMBER 11, 1913.

DEFENDANT appeals from a ruling setting aside a directed verdict and granting a new trial.—*Affirmed.*

*Healy, Burnquist & Thomas,* for appellant.

*Kenyon, Kelleher & O'Connor,* for appellee.

WITHROW, J.—This action was brought to recover damages alleged to have been sustained by the plaintiff because of the erroneous transmission of a telegraph message, resulting, as claimed, in a loss by plaintiff of profits in a real estate transaction. There was a trial to a jury, and at the conclusion of the evidence the trial court directed the return of a verdict for the defendant. A motion for new trial was presented and afterwards sustained by the trial court, and the directed verdict was set aside. From the ruling granting a new trial, the defendant appeals.

I. It is agreed by counsel that the ruling of the trial court in passing upon a motion for a new trial is merely a matter of discretion with which the appellate court will not interfere unless it appears that such discretion has been abused. *Hunter v. Porter,* 124 Iowa, 351. And, although there are instances in which this court may find it proper to set aside such ruling, there is greater reluctance to do so when its effect is to grant a new trial. *Tathwell v. Cedar Rapids,* 122 Iowa, 50.

1. NEW TRIAL: discretion: review.

It is the claim of the appellant that the ruling of the trial court, as shown by the opinion which is a part of the record, was based upon the single and definite question stated by it whether the evidence showed such a complete acceptance of an offer to sell real estate as to create a contract. Appellant insists that the undisputed testimony upon this question was such that the trial court was bound to hold as a matter of law that there was a completed contract before the sending

of the telegram which is the basis of this suit, and that therefore no damages were suffered by the plaintiff. It has often been held by this court that, while much latitude is allowed the trial court in the exercise of its discretion, yet such is a legal discretion; and, when the precise ground is stated upon which the court bases its action, we will determine if such discretion has been abused. *Stockwell v. Railway Co.*, 43 Iowa, 470; *Turley v. Griffin*, 106 Iowa, 161; *Busse v. Schaeffer*, 128 Iowa, 321. It is then our duty to determine from this record whether there was legal error by the trial court in its ruling, and this requires a somewhat extended statement of the evidence.

II. Prior to the 12th day of November, 1910, H. E. Nelson, the appellee herein, was the owner of the N. E. ¼ of section 16, township 86, range 27, Webster county, Iowa. About two months before this time he had placed the land in the hands of one Charles Coomer for sale on commission. After his employment as agent for the sale of said land by plaintiff, Mr. Coomer conducted negotiations with Mr. William Alexander, a prospective purchaser, of White Heath, Ill., and in August he showed Mr. Alexander the Nelson land. At first Alexander offered $5,000 for the land and Nelson asked $8,000. Several letters passed between Mr. Coomer and Mr. Alexander between August and November 12th in regard to the deal; and Mr. Coomer consulted Dr. Nelson on several occasions during the same period. All of said letters were lost at the time of the trial, and evidence of their contents was admitted. Alexander wrote to Coomer that he would give $7,000 for the land. Upon being informed of the offer Nelson went to see Coomer, and, as stated by Nelson, ''Coomer told me that Alexander had made an offer of $7,000. I told him that I wouldn't accept it. That is, I told him, 'You can make him a proposition of $7,500, is the least I will take;' and I told Coomer to tell him about the lease. Between the time that Coomer first mentioned the fact that Alexander was a prospective purchaser for the land and the time that I had the

last conversation to which I have referred, the land had been leased for the year 1911. In the last conversation that I had with Coomer I told him that it was leased for 1911, and that I would try to get released from that but I wouldn't promise." After this Coomer communicated with Alexander by letter which was lost.

Coomer testified in regard to this matter as follows on cross-examination: "After I got the letter from Mr. Alexander I wrote him another letter. In that letter I told him that he could have the farm for $7,500. After the time he left here, and before I wrote the last letter, I had some talk with Dr. Nelson, and after the time that he left here, and before I wrote the last letter, the farm had been rented. Before I wrote the last letter Dr. Nelson and I talked it over, and Dr. Nelson reached the conclusion that he couldn't get rid of the tenant on the lease for the current year. Dr. Nelson told me that he thought he could get rid of the tenant and turn the possession over to Mr. Alexander March 1, 1911." On redirect examination he said: "In the letter which I sent to Mr. Alexander I told him that he could get possession of the farm March 1, 1911. In that letter I told him it had been leased. I don't know that Dr. Nelson had tried to have the lease canceled with the tenant between that time and before this letter business came up. He told me that he would take $7,500 for it and give possession. That was before I wrote the last letter. In the same letter I told Alexander that the place was rented. That letter was written, and this circumstance took place, as I understand it, long before this telegraphing."

Upon receipt of the letter from Mr. Coomer, Mr. Alexander telegraphed his acceptance to the plaintiff, Dr. Nelson, as follows: "White Heath, Illinois, 11—12—10. H. E. Nelson, Dayton, Iowa: Will take farm. Be there next week. Am sending two men. Price it to them at sixty dollars. Don't tell them I bought it. William Alexander." As to this Alexander testified: "After I went back home I received a couple of letters from Mr. Coomer. He wrote me and told me that

he would take $7,500 for the farm and give possession of it next spring, which was last spring. I couldn't tell you what day of the week it was that I received that letter from Mr. Coomer. I sent a telegram right away that day or the next day that I would take the farm to Dr. Nelson.''

It is claimed by the appellant that the negotiations at this point constitute a completed written contract. That Dr. Nelson's offer was communicated by his authorized agent, Coomer, in a letter, and upon receipt of the letter Alexander communicated his acceptance directly to Dr. Nelson.

On the day of and after the receipt of the telegram shown above, Nelson telegraphed to Alexander: ''Will take $7,500 subject to 1911 lease. Wire $500 forfeit to First National''—and, in response to such, Alexander delivered to the telegraph company for transmission the following: ''Nov. 13, 1910. To First National Bank, Dayton, Iowa: Draw through First National Bank, Monticello, Illinois, five hundred dollars. Hold as forfeit on one hundred and sixty acres subject to clear title and satisfactory contract from H. E. Nelson. Notify him I will be there last of week. Wm. L. Alexander.'' This telegram, it is alleged, when delivered read as follows: ''Nov. 13, 1910. To First National Bank, Dayton, Iowa: Draft through First National Bank, Monticello, Illinois, five hundred dollars. Hold as forfeit on one hundred sixty acres subject to clear title and satisfactory contract from H. E. Nelson. Notify him I will be there last of week. Wm. L. Alexander.'' The difference between the message as filed for transmission and as delivered consists in the use of the word ''draft'' instead of ''draw.'' Nelson testified that, when it was shown to him by the cashier of the bank, they both concluded it meant that a draft would be forwarded. A few days later Alexander came from Illinois to close the transaction, but when he learned that Nelson had not made draft upon him for $500, as directed in the filed telegram he refused to go further in the transaction.

There is no claim by the appellant that the last telegram as delivered to the bank, constituted an acceptance of

the telegram of Nelson of November 12th but as stated above the case is rested upon the proposition that the letters of Coomer and the Alexander telegram of November 12th did complete a contract.

Coomer was the agent of Nelson in the effort. to procure a buyer and make a sale of the real estate. The testimony of Nelson is that the last conversation he had with Coomer he (Nelson) told him the land was leased for 1911; that he would try to get released from it but would not promise. He also said he did not believe he had formerly told Coomer to tell Alexander that he could have possession in March, 1911. The proposition which Coomer submitted to Alexander after this conversation, and the acceptance of which by telegram is claimed as completing the contract, was that he could have the farm for $7,500 and have possession March 1, 1911. The authority of Coomer, in acting as the agent of Nelson, was not to fix the terms but to find a purchaser on the terms fixed by his principal. Such was recognized by Alexander as the limit of his authority, for, after the submission of the proposition to him by Coomer, his telegram of acceptance was sent to Nelson.

That the authority granted an agent to find a purchaser does not give him the right to make the contract of sale is well settled by the decisions of our own court and by the weight of authority. *Balkema v. Searle*, 116 Iowa, 374; *Holmes v. Redhead*, 104 Iowa, 399; *Furst v. Tweed*, 93 Iowa, 300; *Brandrup v. Britten*, 11 N. D. 376 (92 N. W. 453); *Halsey v. Monteiro*, 92 Va. 581 (24 S. E. 258).

2. AGENCY: sale of real property: scope of power.

The authority of Coomer being thus limited, and he being without power to contract with a purchaser, which necessarily means to reach an agreement on terms and conditions, there is no question but if he submitted to Alexander a proposition different from that which his principal authorized, he acted in excess of his authority, and an acceptance of the proposition thus made was not an acceptance of an offer of Nelson. While Coomer

3. SAME: new trial.

testifies that in his letter he informed Alexander that the land had been leased, he also stated in the same letter that he (Alexander) could get possession March 1, 1911. On its face this statement would carry with it the assurance that arrangements would be made with the lessee under which his rights would be surrendered.

While we have treated the evidence as showing the facts which is the basis of our conclusion, and this is our duty in passing upon the question of a directed verdict, we do not wish to be understood as holding that the governing and necessary facts are all without dispute. We are of opinion that the trial court did not abuse its discretion in holding that the case presented a question for the jury.—*Affirmed.*

WEAVER, C. J., and LADD and GAYNOR, JJ., concur.