· JOHN G. HALLAND, Respondent, v. MARTIN E. JOHNSON, Appellant.

(174 N. W. 874.)

**Contracts — realty — verbal contract to sell — sales under — void.**

1. Where a real estate agent claiming to have verbal authority only from the owner, or one alleged to have authority to contract for the sale of land, enters into a written contract between the purchasers and himself as agent of his principal, purporting thereby to effect a sale of such land, such written contract is wholly void under the provisions of §§ 5963 and 6330 of the Compiled Laws of 1913.

**Agency — verbal authority — Statute of Frauds.**

2. Where a real estate agent has only verbal authority to find purchasers for certain land, and, as agent on behalf of his principal enters into a written

NOTE.—The provision of the Statute of Frauds that contracts for the sale or purchase of land shall be in writing is undoubtedly intended to apply only to agreements which are intended to effect a change in the title to property, and has no application to contracts of employment by which one person is to act as the agent of another in negotiating a sale or purchase of real property, so as to defeat the right of such an agent, acting under parol authority, to recover the agreed compensation for his services, as will be seen by an examination of the notes in 44 L.R.A. 601 and 9 L.R.A.(N.S.) 933, on necessity that authority .of agent to purchase or sell real property be in writing, to enable him to recover compensation for his services.

The question as to when a broker to sell real estate is entitled to commissions is discussed in a note in 15 L. ed. 884.

contract with the alleged purchasers, such contract is within the Statute of Frauds, and is void and cannot be ratified. The rule would be different if the contract were merely voidable, and not wholly void.

**Agency — authority in writing — principal — when bound — ratification.**

3. Where an agent has no authority to sign a written contract for the sale of land for the principal without first having been authorized in writing so to do, and he signs the contract without having first procured such written authority, ratification of such contract is of no force nor effect under § 6331, Comp. Laws 1913, unless such ratification is in writing, and not then unless the contract is one which is voidable, and not one wholly void.

**Evidence — void contract — introduction of.**

4. Where a contract in writing by a real estate agent on behalf of his principal was wholly void as a matter of law for lack of written authority of agent to execute such contract, such contract cannot be introduced in evidence for the purpose of showing that the agent had produced a purchaser able, ready, and willing to buy upon the terms stated in the void contract, those terms having been inserted by the agent without any authority from the principal authorizing such terms.

Opinion filed June 3, 1919.

Appeal from the judgment of the District Court of Cass County, and an order denying motion for a new trial, *C. M. Cooley,* Judge, sitting in place of *A. T. Cole,* Judge for the Third Judicial District.

Reversed.

*M. A. Hildreth,* for appellant.

It was reversible for the court to charge that the uncontradicted evidence showed a compliance on the part of the plaintiff with the contract and a failure to comply with same on the part of the defendant. O'Day v. Myers, 147 Wis. 549, 133 N. W. 605; Ballow v. Carter, 137 N. W. 603; Harris v. Leise, 135 N. W. 687; Powell v. King, 135 N. W. 719; Clark v. Lanam, 139 N. W. 770; Kane v. Sherman, 130 N. W. 222; Wilson v. Gibb (Iowa) 160 N. W. 324; Jepsen v. Marohn, 21 L.R.A. (N.S.) 939, 119 N. W. 988.

An agent, to be entitled to recover commissions on sale, or for the production of alleged purchaser, must show what authority had been given him by the principal and what terms he was authorized to make, and that he either made a sale on the very terms authorized or produced a purchaser ready, willing, and able to purchase upon the precise terms

of the authority so vested in him.   Powell v. King, 135 N. W. 719; Clark v. Lanam, 139 N. W. 70; Kane v. Sherman, 130 N. W. 222; Wilson v. Gibb (Iowa) 160 N. W. 324; Jepsen v. Marohn, 21 L.R.A. (N.S.) 939, 119 N. W. 988.

A mere listing of lands with authority to sell and dispose of the same at a certain fixed price, in the absence of a special authority to enter into a written contract with the purchaser in the name of the principal, only authorizes the real estate broker to find and present to the principal such a purchaser, and does not authorize such agent to enter into a contract binding the defendant to convey the property. Halsey v. Monteiro, 92 Va. 581, 24 S. E. 258; Morris v. Ruddy, 20 N. J. Eq. 236; Duffy v. Hobson, 40 Cal. 240, 6 Am. Rep. 617; Melne v. Kleb, 44 N. J. Eq. 378, 14 Atl. 646; Coleman v. Garrigues, 18 Barb. 60; Armstrong v. Lowe, 76 Cal. 616, 18 Pac. 758; Glentworth v. Luther, 21 Barb. 145; Grant v. Ede, 85 Cal. 418, 20 Am. St. Rep. 237, 24 Pac. 890; Hedden v. Shepherd, 29 N. J. L. 334; Young v. Hughes, 32 N. J. Eq. 383; Siebold v. Davis, 67 Iowa, 560, 25 N. W. 778; Stewart v. Pickering, 73 Iowa, 652, 35 N. W. 690; Ballou v. Bergsvendsen, 9 N. D. 285, 83 N. W. 10; Brandrup v. Britten, 11 N. D. 376, 92 N. W. 453.

In cases of this nature the burden is on the plaintiff to prove that he has found and produced and brought to the landowner a purchaser who is ready, willing, and able to enter into a contract to purchase with the landowner on the prescribed terms, or in lieu of producing and presenting such purchaser he must show that he has obtained from such purchaser a valid and binding contract in favor of the landowner and a contract that might be enforced by the landowner's heirs in the case of a breach or default in the terms thereof.   Fulton v. Cretian, 17 N. D. 335; Watters v. Dancey (S. D.) 122 N. W. 431; Jacobson v. Rotzien, 127 N. W. 420.

*Engerud, Divet, Holt, & Frame,* for respondent.

GRACE, J.   Appeal from the judgment of the district court of Cass county, and an order denying motion for a new trial, C. M. Cooley, Judge, sitting in place of A. T. Cole, Judge for the third judicial district.

The action is one in which the plaintiff seeks to recover a commis-

sion of $1,725 against the defendant for the alleged procuring of a purchaser for section 7, township 137, range 50. The complaint is in the usual form. The answer is a general and specific denial to the allegations of the complaint. A statement of the facts will give the clearest understanding of the matters at issue:

The defendant owned only the N.E.¼ of the section, Edward E. Johnson the N.W.¼, Kate Bergquist the S.W.¼, and John Johnson, who was incompetent and was under guardianship, the S.E.¼. At the time the plaintiff claims to have listed this land, he knew that the land above described was then owned by the respective parties above named. He made inquiry from defendant; he knew about the title and the source of it, which was from the estate of defendant's father. He knew at that time also that John Johnson was under guardianship. The listing contract, if any, between plaintiff and Martin E. Johnson, was oral. Plaintiff claims the net price to have been $50 per acre. Defendant claims he told plaintiff that he would expect a commission of $2 per acre if he sold it at the list price, and if sold for more than that price, a 5 per cent commission. He claims that Martin E. Johnson gave him authority to sell all of section 7. The defendant, in substance, claims that he listed only his quarter, and that he did not undertake to furnish title to the remaining three quarters. The plaintiff claims that defendant authorized him to sell the whole section, and that the defendant represented that he had authority to act for the others. All of section 7 had been leased by Evan Johnson, the father, to one Fjelstad for the term of five years. The lease did not expire for approximately three years from the time of the alleged sale of section 7 by the plaintiff. The plaintiff, having no other authority than the alleged oral contract between himself and Martin E. Johnson, entered into a written agreement with one T. P. Borderud and Frederickson and Brakke. The agreement is as follows:

Fargo, N. Dak., Jan. 7, 1915.

This agreement entered into between John G. Halland, party of the first part, as agent for Martin Johnson, and T. P. Borderud, and Frederickson & Brakke, parties of the second part:

Witnesseth, that the said John G. Halland has this day received one thousand dollars ($1,000) from T. P. Borderud and Frederickson &

Brakke, parties of the second part, as a part cash payment of the sum of thirty-four thousand five hundred dollars ($34,500) which is the purchase price, and for which consideration the said party of the first part as agent for Martin Johnson agrees to furnish good and merchantable title to the following tract of land:

Section seven (7), township one hundred thirty-seven (137), range fifty (50) Normana township, Cass county, state of North Dakota.

The terms of this purchase are as follows:

The whole purchase price for the above-described section 7 shall be $34,500, one thousand dollars ($1,000) paid down on the date of this agreement, and $9,000 in cash to be paid on or before the 1st day of March, 1915. For the balance of the said purchase price, namely, $22,000, the parties of the second part agree to give notes drawing 6 per cent interest, due in five years from March 1, 1915, with the privilege of prepaying sums of $100 or multiples thereof on any interest paying date. Such notes to be secured by a first mortgage on the above-described land. Such notes and mortgage to be drawn as may be directed by the parties of the first part.

It is further stipulated that the whole of this parcel of land above described shall be transferred to the parties of the second part, or such parties as they may direct, free of all encumbrance excepting a mortgage of $2,500, bearing interest at the rate of 6 per cent annually, due in five years, on the northwest quarter section of the said section 7.

The parties of the second part agree to assume the mortgage on the northwest quarter section, drawing interest at the rate of 6 per cent annually, due in five years.

It is furthermore stipulated that the cash payment of $1,000, together with all subsequent payments made on or before the 1st of March, shall be deposited with the Scandinavian American Bank of Fargo, such moneys to be turned over by the said bank to the party of the first part, when abstract of title, good warranty deed, notes, and mortgages shall have been duly executed and examined by the respective parties in this agreement. Should the party of the first part fail to furnish such title within a reasonable period, then the cash payment made shall be returned to the parties of the second part.

It is further stipulated that sufficient time shall be given in which to secure abstracts and carry out such court proceedings as may be

necessary in order to give good title. If for such purpose more time should be necessary than up to the 1st of March, 1915, through no fault of the party of the first part, then the date of payment of the $9,000 shall be extended until such time.

The parties of the second part assume the rights and obligations of lease in force at this date.

[Signed] John G. Halland, Agent.<br>
T. P. Borderud.<br>
Frederickson & Brakke.<br>
By P. B. Frederickson.

Witnesses:
Amy Hill.

It will be noted that in the first part of the agreement, John G. Halland entered into the agreement, styling himself the agent for Martin E. Johnson. He signs it as John G. Halland, agent. The price at which the sale was undertaken to be made was $56.24 an acre. It is also to be noted that there are no specific terms of sale of the land set forth in the alleged verbal original listing agreement; neither is there substantial proof that specific terms of sale of the land were stated in the alleged verbal listing agreement. The terms of the alleged sale of said land, as contained in the written agreement hereinafter referred to as exhibit 1, are not shown to correspond with any terms of the listing agreement, if there were any. The terms contained in exhibit 1 are evidently such terms as the plaintiff saw fit of his own volition to insert therein. Such terms were neither given, consented to, nor legally ratified by defendant.

The trial was had to a court and jury, and a verdict was returned in favor of the plaintiff for $2,006, damages and costs. The defendant specifies twelve errors based upon the insufficiency of the evidence to sustain the verdict, forty-four errors based upon the admission or exclusion of testimony, eight errors based upon the giving of certain instructions to the jury. All the errors assigned have been fully considered. It is impracticable to discuss each separately; they will be considered and discussed as a whole in connection with our analysis of several of the most vital errors. We will consider first, error 22, which relates to the admission in evidence of exhibit 1. After show-

ing the circumstances surrounding the execution of exhibit 1, which was drawn up in the plaintiff's office, defendant not being present, and signed by the alleged purchasers and the plaintiff, the latter claiming to act as agent for the defendant, it was offered in evidence by the plaintiff. To the introduction of the same, the defendant interposed the following objection:

"Objected to on the ground that it is incompetent, irrelevant, and immaterial, and on the further ground that it appears from the evidence in this lawsuit, that neither Halland nor Johnson, his principal, was able to make conveyance of one-quarter section of the land that was involved, for the reason that that land was owned by a party that was incompetent to convey, save and except through the probate court, and that there is no foundation laid in the authority on the part of the plaintiff or Johnson to convey the land in question, save and except one-quarter section thereof which is described as the N.E.¼, the title of which was in the defendant, Johnson, and upon the further ground that it appears from the face of the record that even under the terms of the contract, exhibit 1, there could be no conveyance to the lands that were in the hands of the probate court, and it does not appear that Mr. Halland had any authority to make the contract in question or that Johnson had any power or authority to ratify such contract. The contract being one for the conveyance of lands, that is within the Statute of Frauds, and it already appears from the evidence that the plaintiff had no power of attorney or written authority from the owners of the land in question to enter into any contract for the sale thereof, and that his assuming authority and power under the very terms of the contract was void and of no effect, and not binding in any manner, neither upon the defendant nor the so-called purchasers; that the pretended contract, exhibit 1, in no sense shows the procuring of a purchaser that could buy or pay, for the reason that it involved the sale of the entire section, one quarter of which was beyond the power of either Johnson or Halland to give title to, and that the contract is absolutely void as a purchase contract, and therefore the evidence is incompetent, irrelevant, and immaterial, and does not prove nor tend to prove the procuring of a purchaser."

The court overruled this objection and admitted in evidence exhibit 1. We are of the opinion and so hold that this was prejudicial, rever-

sible error. Exhibit 1 constitutes no evidence of the sale nor terms of sale, nor ability, readiness, nor willingness on the part of the prospective purchasers to purchase the land, for the reason that Halland was wholly without any authority to enter into the contract as the agent of Johnson, nor was exhibit 1 ever, as a matter of law, ratified. The agreement was neither binding upon the purchasers nor upon Johnson. It is not a legal, binding, nor effective sales contract. It was wholly void. The plaintiff contended it was introduced for the purpose only of showing that he had purchasers able, ready, and willing to purchase the land in question. Considered in this light it is a mere self-serving instrument, and, as evidence, a self-serving declaration. At the time the plaintiff formulated exhibit 1 and inserted therein the terms and conditions upon which the land was sold, he was doing that which only the owner of the land had the authority to do. Halland had authority only to bring purchasers able, ready, and willing to purchase upon terms fixed by Johnson. Assuming, though not conceding, Johnson had authority to contract for the sale of all the land, it is clear the plaintiff was placed in this dilemma, viz., that if he did not prepare an instrument such as exhibit 1 in which definite terms were stated, he would not be in position to prove that he had brought to defendant purchasers who were able, ready, and willing to buy upon terms fixed by the defendant. Thus he usurped the position of the owner of property, arbitrarily fixed terms in the alleged agreement, procured them to be signed by the purchasers,—all of which was wholly unauthorized and wholly void at the time those things were done. Plaintiff claims that exhibit 1 was presented to defendant and approved by him. The Statutes of Fraud squarely cover these matters. Section 5963, Compiled Laws 1913, provides: "No agreement for the sale of real property, or of an interest therein, is valid unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or his agent thereunto authorized in writing." Section 6330, Compiled Laws 1913, which makes § 5963 more specific as to the authority of the agent to enter into a contract on behalf of his principal where the contract is required by law to be in writing, reads thus: "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing *can only be given by an instrument in writing."*

We think it is conceded by both parties that exhibit 1 had no force or effect as a sales contract. As such it had no validity; it was void. Ballou v. Bergvendsen, 9 N. D. 289, 83 N. W. 10, and cases cited therein; Brandrup v. Britten, 11 N. D. 376, 92 N. W. 453; Lichty v. Daggett, 23 S. D. 380, 121 N. W. 868. Plaintiff, however, claims that defendant ratified exhibit 1, and thus it was proper to introduce it in evidence to prove the terms of sale and the ability, readiness, and willingness of the alleged purchasers to comply with such terms. There is no claim by plaintiff that there was any approval or ratification of exhibit 1 by Johnson except a verbal one. Testimony relative thereto shows that the alleged approval or ratification of exhibit 1 was entirely verbal. It was not ratified by any writing signed by Johnson. In that case, such verbal ratification under our statute would be a nullity and of no force or effect.

The sections above set forth and authority cited fully demonstrate that exhibit 1 is absolutely void as a sales contract. If it be conceded for the sake of argument that the plaintiff did verbally ratify exhibit 1, it must be held that such ratification or approval, if any, had no force or effect in this case. A contract for the sale of the land is, by law, required to be in writing. The same is true of the ratification of it. Section 6331, Compiled Laws 1913, reads thus: "A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or, when an oral authorization would suffice by accepting or retaining the benefit of the act with notice thereof."

The contract was absolutely void and of no legal effect. Section 614, Bishop on Contracts, 2d ed., is as follows: "A void deed of land conveys nothing. A void sale of goods passes no title though they are delivered, not even operating as a gift. And persons other than the direct parties, equally with them, may impeach a void judgment. *There can be no confirmation of a void contract;* nor will it constitute an adequate consideration for a new one."

Sec. 694, vol. 2, Page on Contracts, is as follows: "Whether an oral ratification of an unauthorized signature is sufficient depends in part upon the statutory requirements for the original authority of the agent. Putting aside questions of estoppel and performance, *ratification requires the same degree of proof as original authority.* Hence if

the statute requires original authority to be proved by writing, an oral ratification by the principal of an unauthorized contract for the sale of land made by his agent is within the statute, even if the agent had written authority with the terms of which he did not comply."

Under our statute, Halland could not sign the contract unless he was authorized in writing by Johnson so to do. This being true, a ratification to be effective would also have to be in writing. There was no written ratification, hence all testimony relating to oral ratification was wholly incompetent and inadmissible, and should have been excluded. All such testimony in this case was without probative force. It should not have been received as evidence; it was reversible error to receive it.

With exhibit 1 excluded, there remains no competent evidence sufficient to support plaintiff's claim. In this state at the time the cause of action herein arose, it was not necessary that the agent's authority be in writing in order to authorize him to procure a purchaser for land. A verbal authorization for that purpose was sufficient. He has, however, no authority by reason of such an agency to make any written contract with reference to the sale of the property for which he is thus agent which will in any way bind the owner of the property. Before he can do so, he must be for that purpose duly authorized in writing. If he does make such contract without such written authority, it is wholly illegal and void, and an oral ratification of it, if any were made, would in no manner affect its illegality, and it would still remain wholly void for every purpose.

So far as the testimony shows, Johnson received no benefit from this transaction. It is not shown that any money was paid to and retained by him. It clearly appears that he never in writing ratified exhibit 1. Section 6331 was enacted, as we view it, for the purpose of meeting conditions similar to those existing in this case. The alleged ratification being of no force nor effect, exhibit 1 was not valid as a sales contract, nor was it admissible to prove the terms of the sale of the land; for, as we have seen, Johnson did not legally approve nor ratify the same, and therefore did not ratify its terms nor any part or portion of it, and it is of no binding force nor effect as to him for any purpose, and is wholly void. As evidence, exhibit 1 must be considered, so far as Johnson is concerned, as a mere self-serving instru-

42 N. D.—24.

ment and declaration of the plaintiff, and wholly incompetent and inadmissible for any purpose.

Borderud, one of the alleged purchasers, was sworn as a witness, and in effect testified that he and the parties associated with him were able to carry out the contract according to its terms. This testimony in no manner strengthens the plaintiff's case. There was no contract to carry out. The purchasers knew, or must be held to have known, that they were not bound upon the contract, and that it and the attempted ratification of it were, as a matter of law, absolutely void. There was no partial performance as the $1,000 claimed to have been paid on on the contract was not shown to have been received by the defendant nor by anyone authorized by him to receive the same. What we have said, we believe completely disposes of the real merits of the case.

In order to more fully clarify issues involved, it may be well to examine the relative positions of the plaintiff and defendant at the time of the alleged listing agreement with reference to the knowledge each possessed of the condition of the land as to ownership and title. Plaintiff was in no manner misled or deceived in this matter. He knew at the time of the alleged listing agreement that the defendant owned only one-quarter section of the land. He knew who owned each of the other quarters of section 7. He knew the condition of the title of this land. He inquired about it at the time of the alleged listing of it. He was not innocent of who the real owners were. It is not such a case as if the defendant had represented to him that he owned all this land when he did own but one quarter, and the plaintiff relied upon his statement that he owned all of the land, or had authority to sell all of the land, and the plaintiff had no knowledge to the contrary. The plaintiff made no further inquiry into defendant's authority to sell the land.

If he desired, he could easily have fully determined this matter by inquiry from the other owners, and, in any event, he must have known that there would be considerable difficulty in getting title to the one-quarter section of John Johnson, incompetent. In addition to this, the records of Cass county were constructive notice to him of condition of the title, and additional knowledge was brought home to him at the time he negotiated a loan upon the N.W.¼ for Edward E. Johnson. Plaintiff cannot close his eyes to all these matters and claim that he

was in any manner misled or deceived. He was not. He was a man, according to the testimony, accustomed to doing this kind of business. He was a real estate agent. It must be presumed that he had knowledge of the importance of the condition of the title of the property of which he was to undertake to negotiate a sale. He knew the necessity of being invested with proper authority by Johnson or by the owners of the land in order to effect a sale, and the further necessity of delivering to the purchaser the title.

It is clear that the defendant is under no liability for the alleged procuring of purchasers for the whole section nor for his individual quarter. *The whole transaction was void and that included his quarter.* Defendant signified his willingness to make sale of his own quarter section for $50 an acre. He prepared an unsigned deed which was offered in evidence. It does not appear that the plaintiff has acted upon such offer nor indicated any willingness to complete the sale as to such quarter. In such case, it must be considered the plaintiff declined to consider the offer of the defendant in this regard. Exhibit 1 being wholly void, the defendant was under no obligations to complete the sale of his own quarter, and it is held he is under no liability for not doing so. Upon an examination of the entire record, we are satisfied there is no evidence or at least insufficient evidence to sustain the verdict. There are many other errors assigned, some of which are of merit and would justify a reversal of the judgment. We feel it not necessary to enter into further consideration of them. They have all been considered. Some of them are quite closely related to those we have discussed. From what we have stated and the conclusions we have reached with reference to the law of this case, it is apparent that the plaintiff cannot recover. If our statement of what the law is in the case is correct, a new trial could avail the plaintiff nothing.

The judgment is reversed, the case is remanded to the District Court, with instructions to it to enter an order for dismissal. Defendant is entitled to recover his statutory costs upon this appeal.

Birdzell, J. I dissent.

Christianson, Ch. J. (dissenting). I dissent. In order to pre-

sent my views it becomes necessary to make some reference to the record in the case. The plaintiff in his complaint alleges that he is a real estate broker; that in September, 1914, he was solicited by the defendant to obtain a purchaser for section 7, township 137, range 50, at a price of not less than $52 per acre; that it was agreed between the plaintiff and defendant that the plaintiff, on procuring such purchaser, should receive a commission of $2 per acre if the land was sold for $52 per acre, and if the tract sold for more than that price that then the plaintiff should receive a commission of 5 per cent of the total selling price,—in either event the commission to be payable as soon as the sale was made; that the terms on which sale might be made were as follows: A substantial payment on delivery of deeds, the remainder in five years, with interest at 6 per cent, said payments to be secured by a first mortgage on the premises conveyed; that in pursuance of said agreement the plaintiff undertook to find, and in January, 1915, did find, a purchaser willing, ready, and able to purchase said tract of land at $56.24 per acre, or $34,500 for the entire tract, upon the following terms: $1,000 cash paid as earnest money, and $9,000 more in cash on or before March 1, 1915, upon delivery of proper conveyances and abstract of title; the assumption by the purchaser of a first mortgage for $2,500 against one of the quarters; for the remainder of the purchase price, viz., $22,000, the purchaser was to give his notes, bearing 6 per cent interest, due in five years, with privilege of paying the sum of .$100 or any multiple on any interest-paying date,—such notes to be secured by mortgage on the premises sold; that the plaintiff informed defendant of the terms and conditions of such proposed sale, and that the defendant advised and directed the plaintiff that said purchasers and the terms of sale were satisfactory, and that defendant authorized plaintiff to sell the land on the said terms. The complaint further alleges that the plaintiff and the purchasers made the contract set forth in the majority opinion, and that the purchasers at all times were ready, willing, and able to purchase the lands upon the terms stated in such contract, and were prevented from so doing solely by the defendant's failure to perform. The answer is, in effect, a denial of the averments of the complaint.

The plaintiff testified positively that the defendant came to his

office in Fargo on September 22, 1914, and listed the land for sale; i. e., employed plaintiff to obtain a purchaser therefor. One Axel Tangerud, a disinterested witness, testified that he met the defendant just as he came out of plaintiff's office, and that the defendant then told him (Tangerud) that he had listed the section of land for sale with the plaintiff. Miss Amy Hill, a public stenographer, who had a desk in plaintiff's office, testified that defendant frequently came to plaintiff's office in the fall of 1914 and the winter of 1914–1915, and that she heard them talking about the sale of the land at least five or six times. The testimony shows that plaintiff went to considerable trouble in obtaining a purchaser. After he had entered into negotiations with the purchasers involved in this litigation, defendant was informed of such negotiations. In fact the evidence shows that the defendant took the plaintiff and the purchasers out in his (defendant's) automobile to look at the land, and that upon this occasion he participated to some extent in the discussion of the price. The plaintiff testified that the defendant, pending the negotiations, told him to take any paper that Borderud would sign, as Borderud was "absolutely good;" that the plaintiff notified defendant by telephone the same evening that the terms of sale had been agreed upon, and that defendant expressed his satisfaction with the deal; that on the day following the defendant came to plaintiff's office and read the contract set forth in the majority opinion, and expressed his full approval of the terms of the proposed sale as therein contained. Judge Cole testified that (at a subsequent date) he was present and heard a conversation between the plaintiff and defendant, wherein the defendant expressed his intention to complete the sale to the purchasers procured by the plaintiff in accordance with the terms agreed upon between the plaintiff and such purchasers. Borderud, one of the purchasers, was called as a witness, and testified to his ability, willingness, and readiness to purchase upon the terms stated in the agreement. Clearly the testimony of these different witnesses was admissible, even though the position of the majority members as to the written contract is correct. This testimony was properly for the consideration of the jury, and supports the verdict returned.

Under the laws of this state, in force at the time involved in this litigation, the contract of employment of a real estate broker might

rest entirely in parol. Comp. Laws 1913, §§ 5886, 6330; Kepner v. Ford, 16 N. D. 50, 53, 111 N. W. 619. And where an oral authorization suffices, ratification of the acts of the agent may be by parol. Comp. Laws 1913, § 6331. The majority members concede this, but they say that a real estate broker has no authority to make a contract of sale, binding upon his principal, unless he is authorized in writing to do so. And upon this premise they base the conclusion that, inasmuch as the plaintiff attempted to make a contract of sale with the purchaser which he procured, he has no cause of action for the compensation which he had earned by finding the purchaser. The premise is right, but the conclusion is wrong. No one has contended that the plaintiff in this case had authority to make a binding contract of sale. Nor has anyone contended that the defendant has ratified the contract of sale so as to make it enforceable against him. Certainly plaintiff has advanced no such contention, nor did the trial court so rule. The plaintiff does not claim any authority to make a contract of sale, but he does claim, and the evidence shows, that he was authorized to procure a purchaser. He says that he procured such purchaser, and that the terms upon which the purchaser was willing to buy were embodied in a writing, and that such writing was submitted to the defendant and that he assented to the terms of sale stated therein. Plaintiff offered the writing in evidence, not for the purpose of showing a valid contract of sale, but solely for the purpose of showing the terms upon which the purchasers were willing to buy the property. He offered the evidence, with respect to the submission of the agreement to the defendant and his assent to the proposed terms, not for the purpose of showing the ratification by the defendant of a contract of sale so as to make it binding upon him, but solely for the purpose of showing that the defendant assented to the proposed terms of sale, and that therefore plaintiff did in fact perform the services for which he was employed, *viz.,* procured a purchaser able, willing, and ready to buy upon the terms stated, or upon terms assented to by the defendant. There is no room for misunderstanding upon this point. The trial court so indicated when he admitted the contract in evidence, and in his instructions to the jury he said: "You are instructed that exhibit 'I' is not an agreement for the purchase or sale of said tract of land that could be enforced against either of the parties thereto, and

such contract is material to this case only as written evidence of the terms and conditions upon which the said Borderud and Fredrikson & Brakke offered to purchase said tract."

That the contract was admissible in evidence for the purpose to which it was restricted in the institutions is the established law of this state. The precise question was considered and determined by this court in Kepner v. Ford, 16 N. D. 50, 111 N. W. 619. In that case this court said: "Appellant's second assignment of error is predicated upon the court's ruling in receiving in evidence plaintiff's exhibit C, which is a mere memorandum agreement between the plaintiff signing himself as agent for the defendant, and Maurice Deneen and W. H. Deneen, showing that the two last-named persons agreed to purchase the defendant's said property at the sum of $12,000 cash; the defendant to give warranty deed and furnish abstract showing no encumbrance. This is dated August 6, 1904. The ground of defendant's objection is that plaintiff had no authority to enter into such agreement, and hence that the same is not binding upon defendant. This objection is clearly untenable. Whether or not plaintiff could enter into a contract with the Deneens which would be binding upon the defendant is not material. Conceding that he could not, which no doubt is true (Brandrup v. Britten, 11 N. D. 376, 92 N. W. 453), still we think this exhibit was admissible as some evidence at least of the fact that the Deneens were willing to purchase the property, and also for the purpose of showing the terms upon which they were willing to purchase (McLaughlin v. Wheeler, 1 S. D. 497, 47 N. W. 816; Lawson v. Thompson, 10 Utah, 462, 37 Pac. 732). It was incumbent upon plaintiff to furnish proof of such facts. The Deneens afterwards testified to their willingness and ability to purchase the property upon the terms stated, and such fact was not disputed in any way by defendant, and hence such ruling, if error, was entirely harmless. There is nothing in the opinion in Brandrup v. Britten, supra, relied upon by appellant, holding contrary to the views above expressed." At the time of the trial of this action, the rule announced in Kepner v. Ford was the law of this state. Comp. Laws 1913, § 4328. And the plaintiff, his attorneys, and the trial court were justified in acting accordingly. The language quoted from Kepner v. Ford is directly applicable to the instant case. In this case, also, the purchaser testi-

fied to his ability and willingness to purchase the land upon the terms stated. In fact there was more reason for admitting the agreement in evidence in this case than there was in Kepner v. Ford, for in this case the evidence shows that the written agreement was submitted to the defendant and read by him; that it formed the basis of a conversation between plaintiff and defendant; and that defendant expressly assented to the terms of sale therein stated. The written agreement (as held in Kepner v. Ford) was in legal effect merely a memorandum of the terms upon which the purchasers were willing to buy the property. And in his instructions, the trial court expressly limited it to that purpose.

But the majority members say that the agreement was a self-serving declaration, and inadmissible even for the limited purpose for which the trial court admitted it. Of course if the agreement in this case was inadmissible for this reason, so was the agreement involved in Kepner v. Ford. It is indeed difficult to understand the reasoning of the majority members. If their theory is sound a real estate broker who carries on negotiations and arranges the terms of sale with a purchaser through correspondence would be precluded from establishing his cause of action. And if the theory is carried to its logical conclusion a real estate broker should also be held to be precluded from testifying to anything which he did or said in procuring a purchaser, or anything which the purchaser said to him; for of course such testimony, in so far as it would tend to establish the broker's right of recovery, would be in his own interest, and to that extent self-serving. So far as I can find, the majority opinion stands alone. It is contrary to the universal holdings of the courts, and directly in conflict with, and overrules, the decision of this court in Kepner v. Ford.

The questions in this case are: (1) Did the defendant employ the plaintiff as a real estate broker? and (2) Did the plaintiff perform his contract by obtaining a purchaser able, willing, and ready to buy on the terms expressed in the contract of employment, or on terms assented to and ratified by the defendant? If these questions are answered in the affirmative, plaintiff is entitled to recover. Paulson v. Reeds, 33 N. D. 141, 156 N. W. 131; McFarland v. Lillard, 2 Ind. App. 160, 50 Am. St. Rep. 234, 28 N. E. 229; 23 Am. & Eng. Enc. Law, 900. In this case these questions were submitted to the jury. *They were*

*the only questions submitted.* The jury by the general verdict answered these questions in favor of the plaintiff. It is elementary that the findings of the jury are conclusive upon this court, if there is any substantial evidence tending to support them. It seems to me that, wholly aside from the written agreement, there was ample evidence to support the findings of the jury. But even though the evidence was insufficient, this would not justify this court in dismissing the action. The action should not be dismissed unless it clearly appears that there is no reasonable probability that the defects in or objections to the proof necessary to support the verdict can be remedied upon another trial. First State Bank v. Kelly, 30 N. D. 84, 98, 99, 152 N. W. 125, Ann. Cas. 1917D, 1044. It is undisputed that the written agreement was the result of oral negotiations. Even if the agreement is eliminated, the plaintiff would doubtless be able to show that the proposed purchasers were able, willing, and ready to buy the land upon the same terms as those stated in the agreement.

In my opinion the majority opinion in so far as it holds the written agreement to be inadmissible for the purpose for which it was admitted in this case is unsound. And in so far as it overturns the verdict and orders a dismissal of the action, it constitutes a flagrant invasion by this court of the functions which the Constitution of this state has expressly conferred upon the jury.

BIRDZELL, J. I concur in the foregoing dissenting opinion.